E. ALKEMEYER CO. v. McCARDELL.*
(No. 7013.)

(Court of Civil Appeals of Texas. Galveston. Jan. 8, 1916. Rehearing Denied Jan. 27, 1916.)

1. WITNESSES ☞392—IMPEACHMENT.

In a suit for compensation agreed to be paid plaintiff, the admission in evidence of the only part of a letter written by defendant's bookkeeper to its president which was contradictory of her testimony was proper.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1249–1251, 1257; Dec. Dig. ☞ 392.]

2. EVIDENCE ☞99—COMPETENCY.

The exclusion from evidence of parts of a letter from defendant's bookkeeper to its president relating to matters wholly foreign to the issues, and not contradictory of the bookkeeper's testimony, was proper.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 123, 137–143; Dec. Dig. ☞99.]

3. APPEAL AND ERROR ☞1048 — EXAMINATION.

Where the only portion of a letter from defendant's bookkeeper to its president that would tend to serve the purpose of contradicting the bookkeeper's testimony, for which it was offered, was admitted, the fact that the court permitted plaintiff's counsel to interrogate the bookkeeper as to the letter before admission of the part finally admitted was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4151, 4158–4160; Dec. Dig. ☞1048.]

4. TRIAL ☞133—REMARKS OF COUNSEL.

Where the improper remarks of plaintiff's counsel, when defendant objected to his offer of proof of the contents of defendant's books by the bookkeeper's memoranda, as to the length of time it would take to secure original evidence, contended by defendant to suggest that the defense was prolonging the trial, were withdrawn, and the jury instructed not to be influenced by them, there was no error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. ☞133.]

5. APPEAL AND ERROR ☞1051 — HARMLESS ERROR—EVIDENCE.

In a suit for compensation by a store's department manager, the admission in evidence of defendant's bookkeeper's memoranda showing the net profits of the department, if erroneous, was harmless, where defendant later admitted their correctness.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. ☞ 1051.]

6. MASTER AND SERVANT ☞80 — COMPENSATION—EVIDENCE.

In a suit for compensation by a store's department manager, plaintiff's testimony that while he was engaged with defendant it was worth from $125,000 to $175,000 was admissible, where defendant claimed that plaintiff had delayed making any demand for an accounting, while plaintiff testified that he did not make demand sooner because he thought defendant was good.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 107–127; Dec. Dig. ☞ 80.]

7. APPEAL AND ERROR ☞1053 — HARMLESS ERROR—EVIDENCE.

In a suit for compensation by a store's department manager, plaintiff's inadmissible testi-

mony that while he was engaged with defendant it was worth from $125,000 to $175,000 was rendered harmless by its withdrawal and the court's instructing the jury not to consider it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. ☞1053.]

8. APPEAL AND ERROR ☞1050 — HARMLESS ERROR—EVIDENCE.

In a suit for compensation by a store's department manager, the erroneous admission of proof that the par value of defendant's stock was $25 per share, and that plaintiff paid $300 per share for certain shares purchased by him, was rendered harmless, when the same proof was subsequently adduced by the defendant and the production of the corporate records.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ☞1050.]

9. APPEAL AND ERROR ☞1060—CONDUCT OF COUNSEL—EXAMINATION OF WITNESS.

A question from plaintiff's attorney to a witness which was not of a character to reasonably create in the jury any prejudice against defendant, or to cause the rendition of an improper judgment, was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ☞1060.]

Appeal from District Court, Harris County; J. W. Woods, Special Judge.

Suit by J. H. McCardell against the E. Alkemeyer Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Dannenbaum & Taub, of Houston, for appellant. Presley K. Ewing and John Lovejoy, both of Houston, for appellee.

McMEANS, J. On June 26, 1913, James H. McCardell brought this suit against the E. Alkemeyer Company, a corporation, under a contract between them, bearing date July 28, 1908, for one-fourth of the net profits of the ready to wear department of defendant's mercantile business for its fiscal years ending June 30, 1911, and June 30, 1912, alleging the amounts to be due him under such contract as manager of such department for the first year $2,364.68, and for the second year $1,755.49, aggregating $4,120.17. The substance of the contract is set out in the plaintiff's petition, and a copy of the contract was attached to the petition as an exhibit, and therefrom we state the substance of only such portions thereof as we conceive to be material to the issues involved on this appeal.

By the terms of the contract the defendant agreed to establish on the third floor and section of the sixth floor in the building occupied by it a special department of its mercantile business for the sale of "ready to wear goods, corsets, underwear, etc.," and to employ plaintiff and place him in full charge thereof as manager. The defendant further agreed to furnish and supply said department the stock of such goods then in its store and all such further similar stock as might from time to time be required in said business for its successful operation and to obtain the best possible results, not exceeding in the aggregate $25,000 at any one time; all of said goods to be supplied on the order of plaintiff as manager and approved by the president of the corporation under rules and regulations of defendant then existing and such further rules and regulations as might thereafter be adopted by the directors of the corporation. It was further stipulated that a proper and suitable set of books should be kept in said department by its said manager, which at all times should reflect the business done by the department, corresponding with the regular system of bookkeeping of the corporation in its general business. It was further provided that said department should pay its proper proportion of the rents for the building occupied by the defendant, as well as its pro rata of the general expenses of the whole business, to pay its own freight, express, and drayage charges, furnish its own wrapping paper, pay its pro rata per package of the delivery department and its pro rata of premiums for fire insurance, and, in the event of loss by fire, to stand its pro rata of such losses.

The plaintiff upon his part agreed as follows:

"The party of the second part [plaintiff] hereby agrees for one year continuously from this date [July 28, 1908] to devote his undivided time and attention, his faithful services, and earnest, best efforts to the management, successful operation, and upbuilding of said department."

It was further stipulated, in substance, that during the year of the contract plaintiff should be paid a salary of $25 per week, and in addition thereto should receive one-fourth of the net profits of the business of the department under his management.

Plaintiff alleged that, while said contract is expressed for one year, the fact is that after the year had expired the parties thereto continued to do business thereunder in the same way, recognized the contract as still in life, and that each party so conducted himself with respect thereto with the other party as reasonably to justify the other party in believing, and acting on the belief, as the plaintiff did, that they mutually intended it to remain in force upon the same terms, and to continue in force upon such terms during the entire period for which an accounting is sought. The plaintiff's petition further alleged:

That "plaintiff and defendant from the date of said contract between them to the close of the fiscal year of defendant's business, to wit, the 30th day of June, 1912, and thereafter, conducted the department covered by said contract, according to the terms thereof, plaintiff fully and faithfully performing his part of such contract, acting as manager of said business, and continuously during such period devoting his undivided time and attention and his faithful services and earnest, best efforts to the management, successful operation, and upbuilding of such department, except only that, by mutual consent of plaintiff and defendant, his services to it were

enlarged, he being made manager of the defendant's sales department, to wit, on May 24, 1910, in view of which his weekly salary was increased to $40 per week instead of $25 per week, as originally stipulated under aforesaid contract between them.

"That defendant recognized the aforesaid contract between it and plaintiff as still in force, to wit, on December 23, 1910, when it adjusted with plaintiff his profits of one-fourth under said contract for the two fiscal years ending June 30, 1910, on the basis of one-fourth of the entire net profits in addition to total weekly salary, which was deducted as an item of general expense of such department, which one-fourth profits so accruing to plaintiff were then and there fixed and settled at $2,400 which plaintiff then invested in stock of the defendant."

Defendant's answer, after denying averments inconsistent with its position, alleged that on or about May 24, 1910, plaintiff and defendant agreed to cancel and rescind the alleged contract, and to substitute for it a new and different agreement, and that it was thereby agreed and understood between them that plaintiff should cease to act as manager of said ready to wear department, and should act as sales manager of all the departments of the store, and receive therefor the sum of $40 per week, and that, as such sales manager, plaintiff had assumed new and different duties which were inconsistent with his former duties under the original contract, and that on December 23, 1910, he was made manager, and on or about December 27, 1911, general manager, and that his duties as such were also different and inconsistent with his former duties under the original agreement, and that his salary was again increased on December 27, 1911, to $45 per week; that it was an essential and material part of plaintiff's original employment that he should devote his undivided time and attention, his faithful services, and earnest, best efforts to the management, successful operation, and upbuilding of said ready to wear department, and should have a fourth interest in the net profits accruing from the business done in his department under his management; that after plaintiff became sales manager he could not perform effectually and did not perform the duties of manager of said ready to wear department as contemplated by the parties under the original contract; and that defendant employed others to manage such ready to wear department with the knowledge and consent and under the supervision of plaintiff as sales manager and general manager.

The plaintiff by supplemental petition reiterated the averments of his original petition, admitted that the provisions of the contract requiring plaintiff to devote his undivided time and attention, etc., to the department was a material and essential part of his employment, and was so regarded by plaintiff and defendant, and denied the allegations of the answer, except as admitted, and specially denied that he and defendant agreed at any time to cancel and rescind the alleged contract, or to substitute it by

any new or different agreement, or that, as sales manager, manager, or general manager, he assumed duties inconsistent with his former duties under the alleged original agreement, or that he could not thereafter perform effectually, or that he failed to perform the duties of manager of the ready to wear department, as contemplated by the parties under the original contract of employment, or that the defendant thereafter employed others to manage such department; and, in addition, he alleged that under mutual agreement the increased salaries were for the discharge by him of new duties involving additional services, which were to be performed by him concurrently with the services he was to perform under the original agreement, as far as might be, and that otherwise, and only as thus modified, the original agreement should remain in full force and virtue, as it in fact did, so that, as far as performance of the services might be inconsistent or conflict, if at all, with those to be performed under the original agreement, the latter should be, as they in fact were, waived as a part of the consideration of the agreement as modified.

The defendant by supplemental answer reiterated the averments of its original answer, and denied the new averments in the plaintiff's supplemental petition.

The case was tried before a jury, and upon request duly made was submitted to them for a special verdict, by which they found:

(1) That the course of dealings accepted and acted upon by the parties to the contract of July 28, 1908, in their business relations together, in connection with the attending circumstances, was such as reasonably to justify plaintiff, as a man of ordinary prudence, in believing, and acting on the belief, that said contract was mutually intended to remain and continue in force for the years beginning July 1, 1910, and extending to July 1, 1912.

(2) That plaintiff was induced by such course of dealings and attendant circumstances to believe and act on the belief that said contract of July 28, 1908, was mutually intended to remain and was continued in force for the years beginning July 1, 1910, and extending to July 1, 1912.

(3) That the plaintiff, after he became sales manager, and while he was acting as sales manager and general manager, and during the years beginning July 1, 1910, and extending to July 1, 1912, acted as manager of the ready to wear department in question under the said contract of July 28, 1908, and effectually and substantially performed the duties of such manager under such contract.

(3a) That the plaintiff, after his appointment as sales manager, and until June 30, 1912, devoted his undivided time and attention to the management, successful operation, and upbuilding of the special department of defendant's business known as the ladies' ready to wear department in the third floor,

except as devoted to his new duties as sales manager and general manager.

(3b) That the plaintiff and defendant by their course of dealing accepted and acted on between them, taken in connection with the attending circumstances, mutually agreed that the contract sued upon by plaintiff in this cause of July 28, 1908, should remain and continue in force upon substantially the same terms after the appointment of plaintiff as sales manager of defendant's business and until June 30, 1912.

(4) That plaintiff's new duties, as sales or general manager, so far as they divided time with his duties as manager of said ready to wear department, were performed with the mutual consent of the parties, and without any agreement between them that such should supersede the said contract of July 28, 1908.

(5) That the defendant, before the commencement of this suit, refused a request from plaintiff, and has since failed to pay or account to him for any of the amounts claimed by him against the defendant herein.

(6) That after charging the ready to wear department in question with all the expenses specified to be borne by it under the contract in evidence of July 28, 1908, and after deducting all said expenses and due pro rata of the general expenses, losses, etc., as mentioned in such contract, a fourth of the amount of net profits from such ready to wear department (a) for the fiscal year of the business beginning on July 1, 1910, and extending to July 1, 1911, was the sum of $2,016.53, and (b) for the fiscal year of the business beginning July 1, 1911, and extending to July 1, 1912, was the sum of $1,405.49.

(7) That plaintiff and defendant did not agree that the contract sued upon herein of July 28, 1908, be canceled after the close of the fiscal year of defendant's business, ending July 30, 1910.

(7a) That plaintiff and defendant, on or about May 24, 1910, did not agree that plaintiff should cease to act as manager of the ready to wear department of the third floor in question.

(8) That plaintiff's duties as sales manager and general manager of defendant's business were not inconsistent with the substantial performance by him of the duties of manager of the special ready to wear department in question.

(9) That the course of dealing acted upon by the parties to the contract of July 28, 1908, in their business relations together, in connection with the attending circumstances, were not such as reasonably to justify E. Alkemeyer, acting for the defendant, as a man of ordinary prudence, in believing, and acting on the belief, that said contract was terminated on July 1, 1910.

These findings are not complained of by appellant by any assignments of error in its brief.

Appellant's first assignment of error, which is submitted as a proposition, is as follows:

"The court erred, to the prejudice of defendant, in submitting this cause to the jury and in entering judgment herein on the verdict of the jury, for the reason that plaintiff, as witness for himself, testified that nothing had been said by either party to the contract sued upon herein at the time plaintiff was appointed sales manager of defendant's business, nor thereafter, and that nothing was said by either party as to whether or not plaintiff was to continue as manager of the ready to wear department of defendant's business after his appointment as sales manager; that the contract sued upon herein provides that plaintiff agrees 'to devote his undivided time and attention, his faithful services and earnest, best efforts to the management, successful operation, and upbuilding of said department,' and agrees further that the intention of the parties as to compensation, etc., of and for plaintiff is that he shall receive one-fourth interest in the net profits arising and accruing from the business done in his department and under his management. Defendant, in his first amended original answer, pleaded that said provisions of said contract were material and essential parts of plaintiff's original employment, and that they were so regarded by plaintiff and defendant. In subdivision 2, paragraph numbered 6, of plaintiff's first supplemental petition plaintiff admitted that such provisions of said contract were a material and essential part of plaintiff's original employment, and were so regarded by plaintiff and defendant; that the great preponderance of the testimony adduced in this cause shows that after the appointment of plaintiff as sales manager he could not substantially perform the duties of manager of the ready to wear department of defendant's business in accordance with the provisions and requirements of said contract."

Upon the issues as made by the pleadings and submitted by the court to the jury for special findings the evidence was conflicting, and the conflict was settled in plaintiff's favor by the verdict of the jury. To set out the evidence, which, in the opinion of this court, warranted the jury in making their answers, would extend this opinion to an unreasonable length, and we therefore content ourselves with the statement that we find as a fact from the evidence in the record that every material fact found by the jury was warranted by the evidence. Nowlin v. Hall, 97 Tex. 441, 79 S. W. 806. It follows, therefore, that it is our opinion that the court did not err in submitting the case to the jury and entering judgment for plaintiff upon their answers, as complained in the first assignment of error, and the assignment and the several propositions thereunder are overruled.

[1-3] The second, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth assignments of error complain in various forms of the action of the court in sustaining the objection of plaintiff to the introduction in evidence by the defendant of the following letter written by plaintiff's witness Lizzie Sauer to E. Alkemeyer, president of defendant corporation, viz.:

"I did not intend writing you this, but to tell you when you came down, but Mrs. McCardell made a remark that Mr. Harry was so very friendly to her lately, trying to engage her into

conversation, and seemed to want to be very confidential. She said that she certainly wouldn't put her confidence in him, only in you. I thought possibly he was trying to poison her mind. Saturday night Mr. Harry asked me to give him his contract that he had with the firm when he had charge of the third floor; after I gave it he kept it. I can't imagine for what purpose. I am inclosing the copy; thought you might want to keep it.

"Mr. Alkemeyer, this that I have written you may not amount to anything, as Mr. Harry is working hard to get things in shape for business, but I thought I had better tell you, as he might possibly be in with Mrs. Carson. When I told him that Mrs. Carson would not do as she had promised, that is, sell her stock, he said that he did not blame her, as he would do the same.

"This may all be gossip and not amount to anything, but I would rather tell you in case anything should happen I feel I have done my duty to you.

"Respectfully,        [Signed] 'Lizzie."

The court sustained plaintiff's objection to the admission in evidence of the letter as a whole, but did admit in evidence that portion thereof which reads as follows:

"Saturday night Mr. Harry [meaning the plaintiff] asked me to give him his contract that he had with the firm when he had charge of the third floor; after I gave it he kept it. I can't imagine for what purpose. I am inclosing the copy; thought you might want to see it."

This witness had testified that this letter, which bore no date, was written by her in the spring of 1912, and that plaintiff had charge of the third floor ready to wear department as manager at such time, and that she knew that the contract hereinbefore referred to was in force at that time. The letter was offered to contradict the witness on these points.

After a careful consideration of the assignments in connection with the entire evidence in the record, we have reached the conclusion that none of them can be sustained. The court admitted the only portion of the letter that was contradictory of the testimony given by Miss Sauer at the trial, and the other portions, so far as we are able to discern, relate to matters wholly foreign to any issues in the case, and are in no wise contradictory of her testimony. The fact that the court permitted the plaintiff's counsel to interrogate the witness in regard to the letter before the portion set out was admitted cannot afford ground for reversal in view of the fact that the only portion of it that would tend to serve the purpose for which it was offered was admitted.

[4] Plaintiff sought to introduce, and later was permitted by the court to introduce, in evidence memoranda prepared by the witness Miss Sauer showing from the books of the defendant the one-fourth interest of the plaintiff in the net profits of the ready to wear department for the two years for which an accounting was sought. The proffer of the memoranda was met by the objection from defendant that it was secondary evidence, and that the books of defendant were the best evidence of the fact sought to be proved,

and invoked the best evidence rule. Counsel for plaintiff in answer stated that it would require a week or ten days' time to obtain the evidence by an audit of the books, and appealed to counsel for defendant to not interpose the objection, but to allow the memoranda to be admitted as evidence of the fact sought to be proved, subject to correction and without prejudice if an examination of the books proved that the memoranda were incorrect, and again appealed to the counsel for defendant to not unduly delay the matter before the court, recognizing that the objection offered was technically good. He stated in this connection:

"I know it [the objection] is good, and he knows it is good, and he knows that I am not going to fall into any trap; not that he is intending one, but I am not going to fall into any trap of attempting to get in, nor would the court, if I wanted to do it, of making the error of ruling secondary evidence instead of the best evidence. But why can't we, as Greenleaf says they do— It is a rare thing, he says, when they do not agree to let the bookkeeper make it on the outside, and give the jury the result. Now, of course, that is all I am asking."

This language, upon being excepted to by defendant, was withdrawn by plaintiff's counsel, who requested the court to instruct the jury that they be not influenced thereby, and the jury were so instructed.

The witness Miss Sauer had testified that it would take a week or ten days or probably two weeks to go into details in showing from defendant's books, which had been brought into court in response to a subpoena duces tecum, the net profits of the ready to wear department during the time for which an accounting was sought, to which testimony the defendant objected and excepted. The remarks of counsel and the admission of the testimony of the witness Miss Sauer above referred to are made the basis of the appellant's eleventh, twelfth, and thirteenth assignments of error; the contention being that the length of time it would require, by original evidence, to prove the profits sought to be recovered by plaintiff, was immaterial and irrelevant, and that the argument of counsel, above referred to, and the interrogation of Miss Sauer, above referred to, had the effect of suggesting to the jury that counsel for defendant were obstinate and dilatory, and were unduly prolonging the trial, all of which was calculated to prejudice and probably did prejudice the jury against appellant. We think the contention is without merit. The remarks complained of were withdrawn, and the jury instructed by the court not to be influenced by them, and we must assume that the jury were governed by the court's instruction. The length of time necessary to go through the books and make a statement therefrom of the profits of the department in question for the period under inquiry was probably immaterial and irrelevant, but we cannot see how the defendant could have been prejudiced by the admission of such proof.

[5] The witness Miss Sauer testified that she had made from defendant's books memoranda showing what the net profits of the ready to wear department for the two years for which an accounting was sought, and that the same were correct, and thereupon the same were introduced in evidence over the defendant's objection. If the admission of this evidence was error, such error was afterwards rendered harmless by an admission of defendant that the memoranda were correct, and the amounts found by the jury were the result of such admission and the undisputed evidence, and no question is made about the correctness of the amounts thus found, if plaintiff was entitled to recover. The fourteenth and fifteenth assignments which raise the point are overruled.

[6, 7] The sixteenth assignment complains of the action of the court in permitting plaintiff to testify over defendant's objection that during the time he was engaged with the defendant it was worth from $125,000 to $175,000. In approving the bill of exceptions taken to the action of the court in admitting this testimony the court appended the following qualification:

"The defendant claimed at the trial, as a circumstance adverse to plaintiff, and gave evidence, that plaintiff had delayed making any demand for the accounting sought until the two years in question had passed; and the court was of the opinion that the testimony was relevant as bearing upon such delay on plaintiff's part, he testifying that he did not make such demand sooner for the reason that he thought the defendant was good, and that he had similarly for the first two years under the contract, as to which he was afterwards settled with, made no demand. The testimony, however, being afterwards withdrawn, and the jury instructed by the court not to consider it, the court is satisfied that no prejudice resulted to defendant therefrom."

We believe that the testimony in the circumstances was admissible, but, if not, the fact that it was afterwards withdrawn and the jury instructed not to consider it renders its admission harmless. The assignment is overruled.

[8] The admission of proof adduced by plaintiff that the par value of the stock of the defendant was $25 per share, and that plaintiff paid $300 per share for certain shares purchased by him, if error, became harmless to defendant in view of the fact that the same proof was subsequently during the trial adduced by the defendant through its president, E. Alkemeyer, and by the production of its corporate records. The seventeenth assignment raising the point is overruled.

[9] The eighteenth assignment is predicated upon a question propounded by plaintiff's attorney to the witness Otto Taub, to which an objection was sustained. It does not appear to us that the question propounded was of a character to reasonably create in the minds of the jury any prejudice against the defendant, or to have been calculated to cause the rendition of an improper judgment.

We shall not discuss in detail the other assignments of error presented for a reversal. It must suffice to say that we have carefully examined all of them, and find no reversible error in any of them, and they are severally overruled.

The judgment of the court below is affirmed.

Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes