**SOUTHWESTERN TELEGRAPH & TELE-PHONE CO. v. FRENCH et ux.** *

**(No. 8234.)**

(Court of Civil Appeals of Texas. Galveston. Nov. 10, 1922. Rehearing Denied Dec. 7, 1922.)

1. **Appeal and error ⟷1213—Determination on former appeal that evidence was sufficient to go to jury law of case on subsequent trial on same evidence.**

Where the sole issue on former appeal was whether the trial court should have instructed a verdict for defendant on the ground that there was not sufficient evidence for submission of question of whether it was negligent, and where the evidence on the subsequent trial was practically the same as the evidence on the former trial, the determination on former appeal that the question was for the jury was the law of the case on subsequent trial.

2. **Master and servant ⟷288(2)—Assumption of risk by telephone lineman, using hook without safety catches, held for jury.**

In an action for the death of a telephone company's employee, who fell while descending from a platform to ground by a hand line, when a hook by which hand line was suspended from a wire slipped off wire, question of whether he assumed the risk of working such hand line, though the hooks were open and had no safety catches or devices to prevent them from slipping from the wire, held for the jury.

3. **Master and servant ⟷286(8)—Negligence of telephone company using hook without safety catches held for jury.**

In an action for the death of a telephone company's employee who fell while descending from platform to ground by means of hand line, when the hook by which the hand line was suspended slipped off a wire, the question of whether the company was negligent in using open hooks without safety catches or devices to prevent them from slipping from the wire held for the jury, though undisputed evidence shows that other companies use similar hooks.

4. **Master and servant ⟷286(41)—Negligence of telephone company in not giving warning held for jury.**

In an action for the death of 19 year old telephone company's employee, who fell while descending by hand line when a hook by which hand line was suspended from a wire slipped off the wire, the question of whether he was given sufficient warning as to the danger of the work held for the jury.

5. **Master and servant ⟷296(6)—Instructions on contributory negligence held sufficient.**

In an action for the death of telephone company's employee, who fell while descending from a platform by hand line when the hook, without safety catches, by which the hand line was suspended from a wire, slipped off the wire, special issue, "Would an ordinarily prudent person, situated as was the deceased at the time and under the circumstances, have used, or attempted to use, the hand line for the purpose of descending from the platform to the

---

ground?" and instruction that "in determining this question you will consider the age, experience, knowledge, and discretion, if any, of the deceased," *held* to sufficiently submit the question of contributory negligence, though instructions on contributory negligence were not branded as pertaining to "contributory negligence."

**6. Trial ☞261—Requested charge, general in its nature, without explanation of terms used, properly refused.**

In action for death of employee, requested charge that employee was under the duty of exercising ordinary care for his own safety *held* properly refused, being general in its nature without explanation of terms used.

**7. Trial ☞215—Requested charge, seeking determination of whole controversy in a cause submitted on special issues, properly refused.**

Requested charge, seeking a verdict determinative of the whole controversy on special issues, was properly refused.

**8. Trial ☞351(5)—Refusal of special issues not error, where covered by other issues given.**

Refusal of special issues was not error, where the questions were properly covered by other special issues given by the court.

**9. Master and servant ☞105(1)—Employer required to use care used by ordinarily prudent person under same circumstances.**

The telephone company's duty to employ care with respect to hook by which hand line used by employee in descending from platform to ground was suspended from wire was not merely to furnish or to use ordinary care to furnish a hook ordinarily and generally used and found safe by others in the telephone business, but was to use such care and caution in furnishing a hook as an ordinarily prudent person would have used under the circumstances.

**10. Appeal and error ☞882(12)—Employer, having offered to prove that use of hand line by telephone employee was dangerous, could not complain of charge on assumption of risk, as suggesting such dangers.**

In action for death of telephone company's employee, who fell while descending from platform to ground by hand line, when hook by which the hand line was suspended from wire slipped off the wire, the employer, having pleaded and offered to prove evidence that there were perils and incident danger in coming down from the platform by way of the hand line, could not complain on appeal of instruction on assumed risk, on ground that it suggested to the jury that there were dangers arising from the use of the hook and hand line.

**11. Trial ☞352(1)—Special issue submitting assumed risk held sufficient.**

In action for death of telephone company's employee who fell while descending by hand line when the hook by which the hand line was suspended from wire slipped off the wire, special issue, "Do you find that the deceased assumed the risk, as that term has heretofore been explained to you, of using the hand line with its open hook for the purpose of descend-ing from the platform to the ground?" *held* sufficient for submission of issue of assumed risk.

**12. Appeal and error ☞882(14)—Appellant cannot complain of special issue substantially similar to one requested by appellant.**

Appellant cannot complain of special issue substantially similar to the special issue on the subject requested by appellant.

**13. Master and servant ☞218(3)—Risk assumed by minor.**

A minor employee does not assume risk of which he has knowledge, but must also have sufficient discretion, age, and experience to appreciate the nature and extent of such danger.

**14. Trial ☞350(2) — Special issues evidentiary only, and not ultimate in effect properly refused.**

Special issues, which were evidentiary only and not ultimate in effect, were properly refused.

**15. Trial ☞114—Remark of plaintiffs' counsel in argument that defendant hoped jurors would become mixed up on question of "accident" held not improper.**

In action for death involving the issue as to whether the death was the result of an ordinary accident, without negligence of either party, or was caused by defendant's negligence, argument of plaintiffs' counsel that defendant hoped jurors would become mixed on the question of "accident," and failed to distinguish between the everyday definition of an accident and the kind of accident defined in the court's charge, followed by quotation from the charge and comment on difference, *held* not improper.

**16. Trial ☞115(2)—Remarks of counsel during argument to jury as to legal effect of answers to special issues held improper.**

Remarks of counsel during argument to jury as to the legal effect of answers to special issues *held* improper.

**17. Trial ☞133(6)—Defendant, having joined with plaintiff in request for instruction to disregard remarks of plaintiffs' counsel, could not claim that such remarks were ground for reversal.**

In action submitted on special issues, where plaintiffs' and defendant's attorneys asked the court to instruct the jury to disregard statement of plaintiffs' counsel as to legal effect of answers to certain questions, and the court pursuant thereto so instructed the jury, the defendant could not claim on appeal that such remarks of plaintiffs' counsel constitute ground for reversal.

**18. Appeal and error ☞882(16)—Defendant, having invited plaintiffs' counsel to proceed with statement in argument to jury, could not claim that statement constituted ground for reversal.**

Where defendant's counsel foresaw that statement by plaintiffs' counsel during argument to jury as to legal effect of answers to special issues was coming, and invited plaintiffs' counsel to proceed, and took his exceptions afterward, contending that the harm had

been done and could not be eliminated by the court's instructions, the defendant could not claim on appeal that such statement constituted ground for reversal.

Appeal from District Court, Harris County; Erving Boyd, Judge.

Suit by J. E. French and wife against the Southwestern Telegraph & Telephone Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

See, also, 162 S. W. 406; 110 Tex. 505, 221 S. W. 570.

J. D. Frank, C. C. English, and John E. Frank, all of Dallas, and John Charles Harris, of Houston, for appellant.

Carothers & Brown, of Houston, for appellees.

GRAVES, J.  What we regard as a substantially correct statement of the nature and result of this suit is taken from the brief filed in this court for the appellees as follows:

"This suit originated in the district court of Harris county, Tex., Fifty-Fifth judicial district, and was brought by the appellees, J. E. French and his wife, Mrs. J. E. French, against the appellant, Southwestern Telegraph & Telephone Company, to recover damages on account of the death of John W. French, Jr., their son, who fell and was killed while in the employ of the telephone company on the 28th day of October, 1911.

"The deceased, an inexperienced minor, had been working for the telephone company just a short time before his death. During the time that he was working for the company he was under Adrian Hall, cable splicer for the telephone company. The deceased was Hall's helper, and a helper is subject to the orders of the cable splicer, whose duty it is to instruct him and show him how the work is done. The cable is a bundle of telephone wire incased in lead and suspended by clips from the 'messenger wire,' a large steel wire stretched from pole to pole. While splicing the cable, Hall and deceased worked on a platform, suspended from the messenger wire by four leather straps, one at each corner. Each strap had a hook at one end to fasten to the platform and at the other end to fasten to the messenger wire. The hooks on the straps were fitted with safety snaps or catches to prevent them from slipping off when once attached. The platform was steadied by a guy line, attached by hooks fitted with safety catches or snaps. The purpose of the safety snap is to prevent the hook from coming loose and slipping off the wire. To be used in connection with their work, the telephone company also furnished to Hall and the deceased a hand line, consisting of a rope, a pulley, and two hooks. One of the hooks, the stationary one, was attached to the pulley, and intended to fit over the messenger wire, and the other hook was attached to the rope which ran in the pulley, and was used in hoisting material from the ground. The hooks on the hand line were open hooks, and had no safety catches or devices to prevent them from slipping from the wire.

Hall testified that the usual and customary way of coming from the platform to the ground when the splicer and his assistant were as much as 12 or 15 feet from a pole was by coming down the hand line. Hall had never told young French not to go down that way, and during the entire time that French had been working under Hall, Hall had been going down the hand line when he was that distance away from the pole.

"On the day that young French fell, he and Hall were splicing a cable at the corner of Walnut street and Providence street in Houston. The messenger wire that they were working on ran down Walnut street, and they were about 35 feet from the ground and 12 or 15 feet from the nearest telephone pole. There was a messenger wire on Providence street which crossed the one on Walnut street at right angles, these two wires touching as they crossed: the one running down Providence street being on top. The platform was suspended from the messenger wire running down Walnut street, and the hand line from the messenger wire running down Providence street, as young French and Hall were working very close to the intersection. On the telephone pole nearest to where they were working there were electric light wires, and Hall considered these wires dangerous. At about 11:45 a. m., Hall and French were on the platform, and Hall ordered French to go down to the ground and make a test for Hall. French started down from the platform, and put his leg around the hand line, swinging himself off to go down. Hall heard a noise of the rattling of the block, and looked up in time to see French falling, with his leg around the hand line in the usual way, and the hand line and block falling with him; the hook by which the hand line was suspended from the messenger wire having slipped off of the messenger wire. From the result of this fall young French died the next morning.

"Upon the first trial of this case the district court instructed a verdict in favor of the telephone company, and, from the judgment based on such verdict French and wife appealed. The Court of Civil Appeals at El Paso, by a divided court, held that the action of the trial court in peremptorily instructing a verdict for the telephone company was error, and reversed and remanded the case. French v. Southwestern Telegraph & Telephone Co., 162 S. W. 406.

"On account of the dissenting opinion, the Court of Civil Appeals at El Paso certified to the Supreme Court the following question: 'Did the trial court err in giving the peremptory instruction?' The Supreme Court answered the certified question that the trial court erred in instructing a verdict for the telephone company. French v. Southwestern Telegraph & Telephone Co., 110 Tex. 505, 221 S. W. 570.

"Upon the present trial before a jury, the case being submitted on special issues, the jury returned answers to all of the special issues favorable to the appellees, and judgment was rendered in their favor on such verdict, from which judgment this appeal has been perfected."

[1] Appellant, telephone company, upon this appeal first contends that the trial court should have instructed a verdict in its favor on the ground that the evidence was insuf-

ficient to show any negligence on its part as the cause of the casualty. This precise question, though then raised by the present appellees, was the sole issue upon the former appeal, and, since there is no material change in the evidence bearing upon liability, its controlling features upon both trials consisting of practically the same testimony from Adrian Hall, we think the Supreme Court's former decision settles the law of the case against appellant in so far as concerns the peremptory instructions. French v. Southwestern Telegraph & Telephone Co., 110 Tex. 505, 221 S. W. 570, supra. Nor is it deemed essential that the matter be again discussed, but reference is made to the opinion of Judge Higgins for the El Paso Court of Civil Appeals, 162 S. W. 406, which the Supreme Court held to be a clear and correct one.

[2, 3] Likewise we conclude that appellant's accompanying insistence that the trial court should have instructed in its favor, on the ground of a conclusive showing from the evidence that the deceased, in the circumstances presented, assumed the risk inhering in his employment, cannot be sustained; this too, we think, as well as whether the telephone company was negligent, was clearly a question of fact for the jury, and not one of law for the court. The undisputed evidence shows that the hook on which the block carrying the hand line was suspended was an open one; that if a snap or safety catch had been used on it the danger of its becoming disengaged from the messenger wire would at least have been materially lessened; the use of it in this open condition, notwithstanding its habitual and customary employment in that form by appellant and other companies in the business, raised an issue of negligence vel non on appellant's part. Lyon v. Bedgood, 54 Tex. Civ. App. 19, 117 S. W. 900; Railway Co. v. Smith, 87 Tex. 359, 28 S. W. 520; Railway v. Evansich, 61 Tex. 7; Monaghan v. Mill Co., 81 Cal. 190, 22 Pac. 590.

Now, the court here submitted to the jury an inquiry as to whether, under the entire setting of the case, the telephone company owed the minor a duty of warning him of the nature and extent of the dangers in using the hand line with its open hook for the purpose of coming down from the platform to the ground, as well as whether the failure, if any, to give such warning was a proximate cause of his death. Answers, which are not, unless by inference, attacked as being unsupported by the evidence, were returned, to the effect that the company did owe such duty, that it failed to perform it, and that the failure was a proximate cause of the boy's death.

[4] There was testimony by one or the other of the appellees to the effect that the boy was 19 when he fell, but was rather small

for his age, and looked to be only about 17, that he had been working for the telephone company only a short time when hurt, that he had never had any experience in overhead work, and that neither of them knew that he was in that class of service. It is true the witness McCowan, who was cable foreman for appellant, and hired young French in 1911, swore that he told him then what his duties were; that he was to help the splicer; that he explained to him about the hand line, what it was intended for, and instructed him that it was there for him to pull up the material with, and was not intended for him to climb around or come down on; but he nowhere said that he explained to the boy that the hand line might come off the messenger wire and cause him to fall, or that it was more dangerous for him to go down the hand line than to "coon" along the messenger wire back to the nearest pole. Nor, more material still, it appears to us, did he explain the peculiar danger lurking in the use of the hand line for descent under the particular circumstances in which young French was placed to work at the time; that is, there being two messenger wires and attendant cables crossing each other and touching at the intersection of different streets along which they separately ran, the platform on which both the boy and Hall were being attached to the lower messenger and the hand line to the upper one, so that, under the operation of natural laws, when a man's weight was taken from the platform and quickly transferred to the hand line, the messenger wire to which the platform was appended, together with its underhanging cable, would tend to fly up, while the other one carrying the hand line, with its cable, would have a tendency to drop suddenly down, thereby decidedly increasing the chances of the hook's becoming disengaged from the wire. That appears to us to have been the very crux of the situation here as affecting the duty to warn, and the record is silent as to any attempt even to meet it. Moreover, neither McCowan, Hall, nor any one else, told French what to do when the nearest telephone pole to him was covered with electric wires, as Hall without contradiction said was the case here when he ordered the boy to descend. He further testified that he had never told young French not to go down the hand line; that he always used the hand line himself when descending from the platform some distance from the pole, and that he had descended twice that morning from the platform to the ground by means of the hand line, and thought French had made one trip in the same way that same morning; that McCowen was immediately over him, had seen him using the hand line for descending on, but had never told him not to do that, not to let his helpers so use it, nor indeed what it was intended for. H. L. Beard, an employee of and witness for appellant, testi-

fied that the matter of instructing his assistant as to how to do his work and how to use the hand line was always the duty of the cable splicer himself; that he always did that. He further said the hand line was used for descending from the platform, that other employees of the company knew it was being so used, and that he himself had several times used it that way when he was some distance from the pole. We therefore do not think, under all the facts and circumstances, and despite this testimony of McCowan, weakened as it was on cross-examination by the injection of some uncertainties, that it appeared as a matter of law that this minor was given such a warning about, and had such an appreciation of, the dangers attending the particular work Hall directed him to perform as made him alone responsible for the consequences to himself of so doing it. The situation presented does not meet the rule on this subject so clearly stated by our Supreme Court in Railway Co. v. Brick, 83 Tex. 602, 20 S. W. 513, as follows:

"It is insisted, that on account of the plaintiff being 19 years old, and the evidence as to his intelligence and the duration of his employment in the particular service in which he was injured, the court should have treated the case as if he were sui juris. It has been held, that when a minor attains the age of 14 years he is to be considered, as to the question of his assuming the risks of a dangerous employment, as a person of full age, until the contrary is made to appear by evidence. Nagle v. Railway, 88 Pa. St. 35. But we think a great weight of authority supports a different rule, and that if a servant be under age of 21 years, and has not been instructed by the master as to the dangers of his employment, it is a question for the jury whether he has acquired sufficient knowledge of the dangers to exempt the master from liability in case of injury. In the first place, it is the duty of the master to inform him, not only that the work is dangerous, but also as to the extent of the danger and how to avoid it.' If that be done he assumes the risk, and in case he is injured by reason of the risk so assumed he cannot recover. So, also, if he knows not only of the danger but also of its extent, and has the capacity to appreciate it, he then assumes the risk, and the master cannot be held liable. It is not sufficient that he knew the employment is dangerous, but he must also be aware of the extent of the danger, and have the discretion to understand the risk, before he can be held to have assumed it. These are questions of fact to be determined by the jury. * * *

"The plaintiff being a minor, it was the duty of the receiver, through his agents, to instruct him as to the dangers of the employment. That was the primary obligation. But if the plaintiff at the time of his employment knew the nature and extent of the danger, and his judgment was sufficiently mature to appreciate the risk, or if subsequently he became aware of the fact and the extent of the danger, and had the discretion to properly weigh his liability to injury from it, the receiver became absolved from the responsibility arising from the failure to give the instruction. That he knew that there was some danger is not disputed, but whether, under all the facts, his discretion was sufficiently developed at the time of the injury, considering his knowledge and experience, to appreciate the extent of the risk, was not a question of law, but a question of fact, which was properly left to the determination of the jury. And we may remark just here, that the discretion of a minor does not always keep pace with his intelligence. His intellect may be cultivated and developed, and yet he may be more heedless than one of more tender years. Such is the difference among men, that the same may be said of adults. But as to them we have a legal rule which places them all on the same plane. As to those under 21 years of age we have no rule of law, and as to them the question of sufficient discretion or not must, with the circumstances of the case, be left for the determination of the jury."

To the same effect is Hotel Dieu v. Armenddarez (Tex. Com. App.) 210 S. W. 518.

Prefaced by its repeated assertion that the trial court failed to submit the issue of contributory negligence on the part of the deceased, though properly raised by pleading and proof, the telephone company next presents as error the court's refusal to give its requested special instructions on this subject, and also one to the effect that the deceased was under the duty to exercise ordinary care for his own safety.

[5] A sufficient answer to all these contentions is that they rest upon an unfounded assumption. It is true the court did not eo nomine brand its instructions on that subject as appertaining to "contributory negligence," but an examination of the charge discloses that the issue itself, in other but quite appropriate verbiage, was so fully and fairly submitted that the jury could not reasonably have failed to so understand. Special issue No. 7, as submitted, was as follows:

"Would an ordinarily prudent person, situated as was the deceased, at the time and under the circumstances, have used or attempted to use the hand line for the purpose of descending from the platform to the ground? In determining this question you will consider the age, experience, knowledge and discretion, if any, of the deceased. Answer 'Yes', or 'No', as you may find the facts to be."

The jury answered the question in the affirmative, which disposed of all defenses resting upon the claim that French did not act in the premises as an ordinarily prudent person situated as he was would have done.

[6, 7] For a further reason there was no error in refusing the requested charge to the effect that the deceased boy was under the duty of exercising ordinary care for his own safety; it was general in its nature, not explanatory of any terms otherwise used, and sought a verdict determinative of the whole controversy, in a cause submitted on special issues. T. & N. O. Ry. Co. v. Harrington

(Tex. Com. App.) 235 S. W. 188; Calvin v. Neel (Tex. Civ. App.) 191 S. W. 791; Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. at page 652.

[8] Appellant's eighth and ninth propositions on the appeal complain of the refusal of its requested special issues J and K, embodying inquiries as to whether it exercised ordinary care in furnishing the hook as used by French at the time of the accident, and whether it was a reasonably safe tool for what it was intended. These matters were properly covered by the court's special issue No. 1, as follows:

"Was the failure on the part of the defendant, if it did, to furnish a hand line with a safety catch or device for attaching same to the messenger wire, negligence on the part of the defendant, as that term has been defined to you?"

The jury answered in the affirmative. It was unnecessary, if not improper, to again charge upon the same subject merely in a different manner.

[9] Neither was there error in the refusal of special charges G and L, as asked by appellant. The measure of its duty, as these proposed instructions imply, was not merely to furnish, or to use ordinary care to furnish, a device ordinarily and generally used and found safe by others engaged in the telephone business, but to use such care and caution in furnishing a hook as an ordinarily prudent person would have used under the same circumstances. French v. S. W. Tel. & Tel. Co. (Tex. Civ. App.) 162 S. W. 406. Other defects also inhered in these proposals as drawn, but it is deemed unnecessary to enlarge upon them further than to remark that the undisputed evidence showed that the hook furnished was the same as was used generally by other telephone companies. That detail was therefore not a disputed issue of fact properly going to the jury at all.

Through several assignments and propositions based on them further errors, both of omission and commission, are alleged to have attended that portion of the court's charge dealing with the issue of assumed risk, one of the defenses to the suit pleaded and urged by appellant. The part thus criticized was as follows:

"A servant, in the discharge of the duties of his employment, is held by law to have assumed the risk usually and ordinarily incident to his employment and duties, but he does not assume any risks arising from the negligence of his employer, unless such negligent condition is open and obvious, and unless he understands and appreciates the nature and extent of the dangers arising therefrom. And if deceased had the discretion to understand and appreciate the nature and extent of the dangers arising from the use of said hook and line for the purpose of descending from the platform to the ground, then he would be held to have assumed the risk of same."

[10] Appellant attacks this declaration on several grounds: among them, that it suggests to the jury that there were dangers existing and arising from the use of the hook and hand line. While it does not appear to us that such a suggestion inheres in the charge, a sufficient answer to that objection to it is that appellant itself both pleaded and offered evidence to prove that there were perils and dangers incident to coming down from the platform to the ground by way of the hand line; its witness McCowan specifically so testifying. It was therefore not in position to complain on that score. Luckie v. Schneider (Tex. Civ. App.) 57 S. W. 690.

A further ground advanced is the refusal of special charges it requested, first inquiring whether the dangers of the work of the deceased at the time of the accident were open and obvious, and then generally instructing the jury that:

"The master is not required to warn his servants as to any dangers attending the employment, if any dangers there are, where such dangers are open and palpable, even though the servant be inexperienced, if he is, and unacquainted, if he is, with such dangers."

[11, 12] We think the ultimate issue of assumed risk was properly submitted by the court in special issue No. 6 it submitted to the jury as follows:

"Do you find that the deceased assumed the risk, as that term has been heretofore explained to you, of using the hand line with its open hook for the purpose of descending from the platform to the ground?"

Indeed, as given, this is not substantially different from special issue No. 4 on the subject, as requested by the telephone company; hence appellant is left without the right to complain. Baker v. Sparks (Tex. Civ. App.) 234 S. W. 1110; Railway Co. v. Haney (Tex. Civ. App.) 94 S. W. 388.

[13] Moreover, its first issue just referred to, asking whether the dangers of the work were open and obvious, was merely evidentiary, and its next one quoted in full is not only open to the objection of being a general charge in a cause submitted on special issues (Railroad Co. v. Harrington [Tex. Com. App.] 235 S. W. 188; Calvin v. Neel [Tex. Civ. App.] 191 S. W. 79), but did not embody the law on the subject, the rule being, as declared in the above quotation from the opinion in Railway Co. v. Brick, 83 Tex. 603, 20 S. W. 511, supra, that it is insufficient for a minor to know there is some danger, but he must also have sufficient discretion, age and experience considered, to appreciate the nature and extent of it.

[14] Specially requested issues Nos. A and C, carrying inquiries as to whether any skill or experience was required to comprehend the dangers, and whether the hand line

used by the deceased was used for a purpose for which it was not intended, were properly rejected, as being evidentiary only and not ultimate in effect.

[15] The last assault on the judgment is based on three separate statements to the jury in arguments by counsel for appellees, one by Mr. Brown and two by Mr. Carothers. It is claimed they each and all were prejudicial and should cause a reversal. We conclude otherwise, and refuse to reverse the judgment because of them, chiefly for these reasons: The one from Mr. Brown, in substance, merely told the jury that the telephone company hoped they would become mixed up on the question of "accident," and fail to distinguish between the everyday definition of an accident and the kind of one defined in the court's charge here, proceeding then to quote the precise language of the charge and commenting on the difference. Such an argument, in view of the fact that the question of accident was an issue in the cause, was neither without the record nor improper. Of the two from Mr. Carothers, the first also had reference to the special issue as submitted on "accident," while the second dealt with the absence of any such defense from the former pleadings filed in the cause by the telephone company. It is insisted that appellees' counsel, over appellant's persistent objections, in the first of these discussions wrongfully informed and advised the jury as to the legal effect of their answers to the special issue on accident, and in the second referred to the omission for 11 years of any defensive pleading by appellant in the cause based on accident in such way as to appeal to their passion and prejudice, and influence their minds against it. Discussing these in their order, the court first defined accident as follows:

" 'Accident,' as that term is used in law, does not mean every occurrence resulting in injury, but means an occurrence which cannot be reasonably anticipated by either party, and which occurs without negligence of either party."

Then followed special issue No. 8 on the subject in this form:

"Do you find that the death of John W. French, Jr., was occasioned by accident, as the term has been defined to you? Answer Yes or No, as you may find the facts to be."

Mr. Carothers, after reading to the jury this charge on accident just as given by the court, then further said in reference to the answer to be returned to this issue No. 8 under it what may fairly be epitomized in this excerpt from his language:

"If you answer this question that this particular thing that happened, under the court's charge here, is an accident, then you absolutely wipe the slate clean, and we have no verdict in favor of John W. French."

To this was added the suggestion that if the jury would thoroughly analyze and apply the court's definition of accident, they could not be misled. The bill of exceptions shows that later on the same day, after appellant's counsel also had addressed them, the court instructed the jury to this effect:

"Gentlemen of the jury, both plaintiffs' attorneys and defendant's attorneys having asked the court to instruct the jury that they shall not regard the statement of counsel [Carothers] for the plaintiffs in his argument, as to what the legal effect would be of your answers to certain questions, and in accordance with that request, I am instructing you at this time that that portion of the argument of counsel for the plaintiffs is, by plaintiffs, withdrawn, and expunged from the record, and you will therefore not consider that language nor that part of the argument."

On objection of appellant's counsel that the harm had already been done, notwithstanding the jointly requested direction just quoted not to consider, this colloquy between such counsel and the court ensued:

"The Court: If I thought it was that serious I would enter a mistrial.

"Mr. English: It probably will not be that serious. I hope not, but the fact is that the argument is there, and that is the way we try our cases, figuring on what our rights are.

"The Court: What are you going to do about it? What can the court do he has not already done?

"Mr. English: I think the court has done all that he can do, except I do not by that waive my exception in the first instance."

[16] As the objection, the withdrawal, and the mutually requested direction to the jury not to consider this argument shows, it concededly did advise the jury what the legal effect on the whole controversy of their answers on the issue of accident would be, and therefore was improper. Morris v. McGough (Tex. Civ. App.) 230 S. W. 1092–1094, § 5, and authorities there cited.

[17] But while this is true, we think the election of appellant's counsel to proceed with the trial and take chances on a verdict, after the language had been withdrawn and at his request the jury had been instructed not to consider it—which situation he did not at the trial consider serious enough to justify a mistrial—left appellant in no position to claim a reversal on that account at this court's hands. Dallas v. Maxwell (Tex. Civ. App.) 231 S. W. 435; Alkemeyer v. McCardell (Tex. Civ. App.) 183 S. W. 416; Black v. Wilson (Tex. Civ. App.) 187 S. W. 495; Association v. Warner (Tex. Civ. App.) 234 S. W. 549; Rice v. Garrett (Tex. Civ. App.) 194 S. W. 673; Railway Co. v. White (Tex. Civ. App.) 216 S. W. 267.

Under similar considerations and the authorities last cited is based our like conclusion as to the second prong of the argument

here in review. It in effect simply amounted to a comment on the telephone company's never having before this trial set up the "accident" defense in its pleadings. The counsel who made it withdrew it, and the court instructed the jury that no such comment was material, nor about a matter the jury were permitted to indulge any opinion on, because the former pleadings of the defendant were not in evidence.

[18] Furthermore, as the bill of exception shows, counsel for appellant, although he in advance foresaw that this statement was coming, invited appellees' counsel to proceed with it, and then took his exceptions afterwards, contending that the harm had been done and could not be eliminated by the court's instruction. We do not think appellant's resulting position was any better than in the other instance.

What has been said disposes of the merits of the appeal. All assignments have been carefully considered, but under the conclusion that none of them point out reversible error, the judgment has been affirmed.

Affirmed.