## DALLAS RAILWAY & TERMINAL CO. v. REDDY.

### No. 6260.

Court of Civil Appeals of Texas. Amarillo.

Dec. 8, 1952.

Rehearing Denied Jan. 5, 1953.

Burford, Ryburn, Hincks & Ford, Dallas, for appellant.

White & Yarborough, Dallas, for appellee.

MARTIN, Justice.

Appellee, Charles P. Reddy, sued appellant, Dallas Railway & Terminal Company, for damages for injuries incurred by his wife, Mrs. Mignon Reddy, when she fell while attempting to alight from one of appellant's electric buses. Appellee's original petition asserted that Mrs. Reddy's fall was proximately caused by her foot slipping on a worn, slick metal strip which covered the bus step. By an amended petition appellee asserted that Mrs. Reddy fell when she hung the heel of her shoe on a metal strip which was protruding above the floor level of the bus; further alleging that the "floor covering had become worn in and around the metal strip in such a way that same left a crack between the floor and the lower edge of the metal strip." The amended pleading repeated the allegations of the original petition.

The trial court submitted to the jury fifteen special issues. Special Issue No. 1 will be quoted as the principal contention on appeal involves such issue. "Do you find from a preponderance of the evidence that at the time and on the occasion in question, the Dallas Railway & Terminal Company maintained the floor of the bus with a metal strip near the side exit door, protruding above the surrounding surface of the floor of the bus?" The jury answered this issue "Yes" and also found under issues 2 and 3 that this was negligence and the proximate cause of the injuries to Mrs. Reddy. Upon such jury an-

swers, in conjunction with other issues, the trial court rendered judgment for appellee for $6,266. Appellant perfected an appeal and assigns seven points of error. The Supreme Court transferred the appeal from the Fifth Supreme Judicial District to the Seventh District.

Appellant's first three points are briefed together. The first point asserts the court erred in overruling defendant's motion to disregard the jury's answers to special issues 1, 2 and 3; the second point is that there was no evidence to support said issues; and the third point is that the evidence is wholly insufficient to support the jury's answers to special issues 1, 2 and 3. These three points will be disposed of first by an examination of the evidence in the cause.

An examination of the record under appellant's first three points reveals an issue which tends to wholly refute appellee's cause of action. Appellee pleaded that his wife's "foot slipped on the step immediately below said metal strip which step was almost entirely covered with a slick, metal piece which almost covered said step." Mrs. Reddy testified that her foot slipped on the metal substance on the first step. She further admitted that she did not think she would have fallen had her foot not slipped on the metal substance on the step. The jury, in answer to special issue No. 4, found that the appellant did not maintain the step of the bus with a slick, worn piece of metal near the side exit door in question. It is therefore inescapable that the jury finding that there was no slick, worn piece of metal on the step wholly refutes appellee's testimony as to the proximate cause of her fall.

The jury finding as above outlined wholly eliminates the appellee's theory that his wife slipped on a slick, worn piece of metal on the bus step. The cause will be examined as to appellee's only other ground of negligence, to wit, that appellant permitted the rubber floor mat to become worn below the bottom edge of the metal binder strip. Appellee's wife and several disinterested witnesses testified as to the condition of the bus floor mat and metal bind-

er strip thereon. Other than certain testimony of Mrs. Reddy as discussed in the following paragraph, the facts as testified to by all the witnesses were acquired by their observation of the bus floor mat and binder strip from the point of view of an ordinarily prudent person acting under the same or similar circumstances. Such testimony is uncontroverted and supports appellant's position in the cause. The appellee's wife testified that she sat near the steps and the exit door and that she did not observe anything unusual about the steps. "A. No; nothing that I had not seen before." As to the rubber mat, she testified: "A. I didn't observe it was worn until after I had fallen * * *." Thomas Terry, operator of the bus, testified that the floor of the bus had a metal strip along the edge. "A. There was metal stripping and that holds that rubber fibre down on the first floor of the bus." Terry testified that the matting on the floor of the bus came right up to the metal strip on the edge of the floor. He further testified there was not any worn down space of the rubber matting adjacent to this metal strip and that the first step was covered with rubber fiber. Charles Prasifka, secretary and bookkeeper for 31 years for the Dallas Morning News, examined the first step down from the bus and found it was covered with a dark material which looked like rubberoid or composition material. He also saw the aisle of the bus and testified that it had a metal strip across the edge, with little bumps on it and he could see nothing wrong with the metal strip. The pictures of the bus floor and steps shown in the record reveal the ribbed floor covering was not worn down and the bus steps were not covered with metal but were covered with some ribbed, rubber type of material. An examination of all the evidence in the cause reveals no evidence of probative force supporting the issues which appellee attempted to present by his pleadings and evidence and the jury findings, at least, are against the great weight and preponderance of the evidence.

An examination of all the evidence in the cause reveals the following issue. After Mrs. Reddy fell she was lying down on a seat near the exit door and she testified that in this position she observed the floor mat was worn down approximately ⅛ of an inch in relation to the binder strip. Since none of the other witnesses who examined the floor covering and binder strip viewed the same while lying down it is not revealed as to what they would have observed from such position. But, none of the other witnesses in the cause observed any worn down place in the mat from their examination of the same, nor is such worn down condition revealed by the pictures in the record. In fact, the pictures in the record, labeled Defendant's Exhibit 2 and Defendant's Exhibit 3, refute Mrs. Reddy's testimony that there was a ⅛-inch crack between the bottom edge of the metal binder strip and the floor mat thereunder.

The evidence in the cause may be weighed on another basis. Mrs. Reddy contends that she hung her heel on the bottom edge of the binder strip on the bus floor and fell before she entered the step well. Jodie Bolt, employed for about four years with the Home Furniture Company, testified that he was immediately behind Mrs. Reddy leaving the bus and that she fell from the bottom step when she was starting to step off to the ground. H. S. Baber, superintendent of the South Dallas Station of the post office department, testified that Mrs. Reddy got down onto the second step and that she fell when her little boy slammed the door in her face. He also testified that Mrs. Reddy was down in the step well when she fell. Such testimony refutes appellee's theory that his wife fell from the bus floor.

An examination of the record reveals there is not a scintilla of evidence that the binder strip on the floor covering protruded or that it was loose or in any way different from its normal position as a binder on the edge of the floor mat. Appellee's wife examined the floor covering and binder from a lying down position and testified she could observe no more than approximately a ⅛-inch crack between the floor covering and the metal binder strip and she was of the opinion that she would not have fallen had her foot not slipped on the slick, worn piece of metal on the step—which slick, worn piece of metal the jury found did not exist as a matter of fact.

An examination of the entire record reveals that the evidence is insufficient to support the jury findings as to special issues 1, 2 and 3 and such findings are so contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and unjust and a new trial is required in the cause. Appellant's point 3 is accordingly sustained. King v. King, Tex.Sup., 244 S.W.2d 660; Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164.

Appellant's point 4 presents that the court erred in submitting special issues 1, 2 and 3 to the jury because said issues did not submit the question of a worn or defective floor mat on the bus as contended by plaintiff, but permitted the jury to find negligence based merely on the construction of the bus. The trial court submitted special issue No. 1 as to whether appellant "maintained the floor of the bus with a metal strip near the side exit door, protruding above the surrounding surface of the floor of the bus."

■ An examination of the record under appellant's point 4 reveals that the floor of the bus was covered with a ribbed type of rubber material. This material had a metal binder on the edge thereof at the exit door and the top of this metal binder had small nobs to prevent a passenger from slipping on the same. There is not a scintilla of evidence in the record that this strip protruded above the floor of the bus other than as originally installed as a binder strip. The definition of "protrude" will not be quoted as the word is one of common meaning, but it is noted that appellee did not even attempt to prove that this metal binder strip had been bent upward or raised in any manner whatsoever from its original position. Appellee's wife testified that she did not observe this strip being loose. Appellee's sole contention is that the rubber floor mat had been worn down. It cannot be correctly contended that the wearing down of the rubber mat raised the binder strip. There is no evidence that the binder strip had been moved or changed in any way from its original position and function as a binder strip over the edge of the rubberoid mat. In fact, the testimony of all disinterested witnesses reveals that there was nothing wrong with the metal binder strip. This testimony is further supported by picture in the record. The ultimate issue under appellee's pleadings and evidence is not whether the binder strip had been moved or changed in any way or protruded from its original position as a binder. One of the ultimate issues was whether the Dallas Railway & Terminal Company maintained the floor of the bus with a worn floor covering near the side exit door.

Appellee pleaded that the binder strip protruded above the floor level, but he qualified this pleading by showing such strip protruded above the worn portion of the floor merely by reason of the fact that the floor covering "had become worn in and around the metal strip in such a way as to leave a crack between the floor covering and the lower edge of the metal strip." But if it be conceded that appellee's pleadings allege that the binder strip had been raised or protruded above the floor rather than alleging that the floor covering was worn down, there is no evidence in the record to justify the submission of the issue as to whether the binder strip protruded above the surrounding surface of the floor of the bus.

Special Issue No. 1 as submitted by the trial court did not present to the jury the issue which appellee pleaded and attempted to prove—that the appellant had permitted the floor covering to "become worn in and around the metal strip in such a way as to leave a crack between the floor covering and the lower edge of the metal strip." The issue submitted by the trial court permitted a recovery against appellant for merely maintaining a binder strip on the edge of the floor covering. Such submission is not authorized as a matter of law and appellant's point 4 is sustained. El Paso Electric Co. v. Barker, 134 Tex. 496, 137 S.W.2d 17; Trinity & B. V. Ry. Co. v. McDonald, Tex.Com.App., 208 S.W. 912; Taylor v. White, Tex.Com.App., 212 S.W. 656.

Appellant's other assignments of error are not ruled on here as the same issues may not arise on a retrial of the cause. Appellant's third and fourth points are sustained and the judgment of the trial court is reversed, and the cause is remanded for a new trial.