**TEXAS EMPLOYERS' INS. ASS'N**

**v.**

**HAYWOOD.**

No. 6326.

Court of Civil Appeals of Texas. Amarillo.

Oct. 12, 1953.

Rehearing Denied Nov. 16, 1953.

ered judgment against appellant, Texas Employers' Insurance Association, compensation carrier for West Texas Compress and Warehouse. Appellee testified that he was totally and permanently disabled by an injury to his neck sustained while he was holding a chain with both hands and kicking a bale of cotton out of a cotton press. On special issues submitted to the jury he recovered judgment in the amount of $10,025. Appellant perfected its appeal and asserts sixteen points of error. Some of these points present several issues.

Appellant's first point of error is that appellee's counsel in his argument to the jury criticized appellant for failure to produce evidence through a witness who was not within the control of the appellant. Under this point of error it is noted, as set forth in appellant's objection to the argument, that counsel for appellee stated that appellant could force a Mr. Shaw to bring his records before the court and thereby show the actual hours appellee had worked for said Shaw. The inference under the argument was that if Shaw's records did not corroborate appellee's testimony that he had not been able to hold steady employment that appellant should have produced Shaw to impeach appellee. The facts will not be discussed in detail as it is deemed sufficient to state as to this issue that Shaw, a colored man, was the uncle of the appellee. Since objection was made to this argument on the ground specified in appellant's first point, only one issue need be determined under the applicable law and that issue is whether or not such reference in the argument to the failure of appellant to produce Shaw and his records in evidence was of such a harmful nature as to require a reversal of the cause of action.

Crenshaw, Dupree & Milan, Lubbock, for appellant.

Bob Huff, Lubbock, for appellee.

MARTIN, Justice.

This is a workmen's compensation case in which appellee, O. T. Haywood, recov-

It is not believed that the jury in this cause would assume that appellant corporation could have gained anything by producing the colored uncle of the appellee to support its defense against appellee. Appellee's reference to the failure of appellant to produce his uncle as a witness in this cause could not be as harmful as an argu-

ment of counsel that the opposite party should have produced a physician who was available to either party as a witness—which argument was held to be error by the Court of Civil Appeals in Dallas Railway & Terminal Co. v. Aultman, 253 S.W.2d 900, but, such ruling was reversed by judgment of the Supreme Court in 260 S.W.2d 596. Under this decision of the Supreme Court it is here ruled that the above argument as made in this cause was not reasonably calculated to cause the rendition of an improper judgment in the case. Also see Sterrett v. East Texas Motor Freight Lines, Tex.Sup., 236 S.W.2d 776. Appellant's first point of error is overruled.

■ Appellant's 2d, 3rd, 4th, 5th, and 6th points of error will be treated together, as briefed, in that such points of error involve the same rule of law. These points of error also complain of the argument made by appellant's counsel but must rest on the proposition that such argument was so prejudicial and inflammatory and improper that it should have been restrained by the court on its own motion as no objection was made to the same. Since no objection was made to the argument here in issue and no request was made of the court to instruct the jury not to consider the same, the rule of law governing the issue is found in Wade v. Texas Employers' Ins. Ass'n, Tex.Sup., 244 S.W.2d 197, Syl. 1. Under such authority the controlling issue here is whether the argument was so plainly prejudicial as that its harmful effect, if any, could not be cured by an instruction from the court.

■ Since appellant has not pointed out the inflammatory and prejudicial elements of the argument, the court will here examine what may be considered as the most prejudicial statement made in such argument. The gist of appellee's claim was that he had injured the vertebrae in his neck and could not move his head without extreme pain and suffering and was compelled to hold his head in the fixed position exhibited at the trial. In this state of the record we note in the argument, along with

other matters, the following statement by appellee's counsel: "I think that you could decide that without plaintiff bringing in a doctor. Just look at him. If there is anybody—I know you—you gentlemen try it when you get back there deliberating. I don't think there is a man alive that can toss his head in one position and keep it thirty minutes." Such argument, urging each of the jurymen to perform an experiment by holding his head to one side in the same manner as that of the appellee, if followed by the jury, could result in the jury deciding the case wholly on the basis of such experiment performed in the jury room. If this was error, and it would be error if the jury followed the argument and performed such experiment, since no objection was made to such argument the issue is whether such error could have been cured by an instruction from the court. If the error was curable it was waived by appellant's failure to object at the time the argument was made. It must be conceded that if the jury followed the argument of counsel the jurymen would have had to perform the experiment before they could have ascertained the effect of such experiment. It must be further conceded that had an objection been made to the argument on this issue and an instruction from the court requested that the court could easily have cured the error by merely instructing the jury against performing any experiment and that they would be governed solely by the evidence introduced in the cause. Since the error, if any, could have been cured by objection made at the specific time and by an instruction from the court to the jury, it is here ruled that appellant waived the error, if any, by failing to object to the argument when made and by not further requesting the court to instruct the jury on the issue.

■ Other elements of the argument as most complained of in the points of error will be briefly discussed. Appellee's liberal statement concerning the "hundred thousand people in Austin" and "lots of those airplanes" is not here interpreted, as it was by counsel for appellant, to mean that appellee was calling upon appellant

to bring 100,000 people by air to testify in the cause here in issue. But, if the argument is so interpreted, it is not believed that any reasonably prudent person would place this duty on the appellant even under the fervent argument of appellee's counsel. Further the record reveals that the two colored witnesses who were flown in claimed to be friends of the appellee and then sought in a mild way to strip appellee of his prospects of recovering the desired $10,000. Appellant asserts it was error in this connection to argue in effect that such witnesses were acting the part of Judas. Counsel's production of Judas in color is a somewhat unusual approach in seeking to exert scriptural influence on a jury but it is not regarded as causing harm to appellant herein. Without discussing all the elements of the argument, particularly since the specific inflammatory elements are not pointed out here, it is ruled that the argument as complained of in the points of error herein could have been prevented by an early objection to the same or, in any event, could have been cured by proper instruction from the court and that appellant waived the error, if any, in the argument by failure to object to the same when made and his points of error 2, 3, 4, 5, and 6 are overruled. Wade v. Texas Employers' Insurance Ass'n, supra.; Sterrett v. East Texas Motor Freight Lines, supra; Williams v. Pettigrew, Tex.Civ.App., 251 S.W.2d 183, Syl. 5.

■ In view of the fact that appellant first objected to the argument of adverse counsel in its motion for a new trial, it should be adjudicated here as to the time when appellant should be required to raise with the trial court an objection to an erroneous incurable argument. The trial court should have an opportunity to rule upon this objection before the jury is retired to deliberate upon the issues in the case. If the argument was erroneous and incurable, the time of the jury and court should not be consumed in useless endeavor. Under this view, the rule on this issue as expressed in Baker Hotel of Dallas, Inc., v. Rogers, Tex.Civ.App., 157 S.W.2d 940, 944, Syl. 9, is here adopted: "We think objection

should have been made at the time the alleged improper argument was made, either openly, or privately to the court; at least, before the retirement of the jury; or, if appellant deemed the argument so prejudicial as that neither an explanation or withdrawal by counsel, nor an instruction by the court, would have rendered the argument harmless, request should have been made to withdraw the case from the jury and discharge the panel. We do not think a litigant should be permitted to lie in wait, take chances on a favorable verdict and, being disappointed, sally from ambush and, for the first time, complain of an improper argument in the motion for a new trial." It is further ruled that the one objection as made during the entire argument would merely reach the vice which it specified and cannot be treated as an objection to any other elements of the argument thought improper. Sterrett v. East Texas Motor Freight Lines, Tex.Sup., 236 S.W.2d 776.

■ Appellant's points 7, 8, 9, and 10 assert that the court erred in rendering judgment on the verdict of the jury because the finding of the jury as to total permanent incapacity and their further finding that there was no partial incapacity are against the great weight and preponderance of the evidence. There has been no hesitancy in declaring the verdict of a jury to be against the great weight and preponderance of the evidence but this issue must be clearly revealed by the record in the cause. Musslewhite v. Gillette, Tex. Civ.App., 258 S.W.2d 104; Dallas Railway & Terminal Co. v. Reddy, Tex.Civ.App., 254 S.W.2d 795. Appellee's injury was ascribed by one of his physicians to the crushing of the intervertebral disc between the first and second vertebrae and a resulting fusion of such vertebrae. Since the record here conclusively reveals that in every normal individual the first two vertebrae are fused and that there is no intervertebral disc between such vertebrae, the above expert medical testimony will not support a jury verdict of injury. This position is supported not only by all the other expert medical testimony in the

504

cause but also by "Gray's Anatomy", a recognized, accredited text on the subject produced at the trial by appellee's counsel. Appellee's injury could not have been caused by the fusing of such vertebrae or the crushing of a nonexistent disc as testified by appellee's expert. Apparently, counsel for appellee recognized that this medical testimony was out of joint on the issue because he produced another medical expert, who examined the appellee either during the process of the trial or immediately prior thereto. Although a careful examination of this second expert's testimony reveals many elements that do not tend to enhance appellee's cause of action, it is here ruled that such expert testimony and the testimony of the appellee and the other colored men who supported his version of the injury occurring at the compress is sufficient to support the jury verdict and appellant's points 7, 8, 9, and 10 are overruled.

■ Appellant's point 11 does not reflect error. The brief on such point reveals that appellant's counsel developed that appellee had been sent to one Dr. J. A. Finer where he was treated for a period of several days. Dr. J. A. Finer was not thereafter produced as a witness for appellee. In the course of examination of appellant's physician in the cause, appellant's counsel made the following remark: "I believe the evidence shows that that was done at the request of O. T.'s attorney's doctor here in Lubbock". This question was a reference to appellee being sent to Dr. J. A. Finer by a former attorney of appellee, one Cook. Appellee's counsel then asked the following question: "Q. Well, that is the doctor I just sued for $135,000. You knew that, didn't you?" Although appellant cites Porter v. Puryear, Tex.Civ.App., 258 S.W.2d 182, writ granted, as an authority that the above constituted error, the opinion is here expressed that appellee's examination does not violate the rule defined as correct in the Puryear case. However, the fact situation here is eminently different from that found in the case cited. Since counsel for appellant had shown that appellee was

sent to J. A. Finer by appellee's own attorney, counsel for appellee owed a legal duty to him to reveal why Dr. Finer was not called by appellee as a witness. Appellee's counsel committed no error in seeking to introduce in evidence that he was attorney for a plaintiff in a major cause of action against J. A. Finer as defendant as such evidence was merely an explanation as to why appellee did not produce Dr. Finer as a witness. Appellant's point 11 is overruled.

■ Appellant's point 12 alleges that the trial court sought to coerce the verdict of the jury as to a finding that appellee did not sustain a partial incapacity as a result of his injuries. The trial court submitted to the jury an issue as to total incapacity under which the jury found appellee suffered a total incapacity. The trial court also submitted special issue 8 to the jury which inquired: "Do you find from the preponderance of the evidence that the plaintiff, O. T. Haywood, has sustained or will sustain partial incapacity as a natural result of said accidental injury or injuries, if any, received on or about December 31, 1951." When the jury announced its verdict, it was discovered by the trial court that the jury had answered all said special issues but issue No. 8. Thereupon the trial court gave a supplemental instruction to the jury as follows: "Your verdict is incomplete in that special issue No. 8 must be answered one way or the other to make a complete verdict." Under the point of error here in issue it is not revealed where there was any coercion or any suggestion made to the jury as to the manner in which it should answer the issue. In the use of the language shown the court merely advised the jury to answer the issue *one way or the other*. (Emphasis added.) This instruction was authorized under Texas Rules of Civil Procedure, Rule 286, Dallas Ry. & Terminal Co. v. Starling, Com. App., 130 Tex. 379, 110 S.W.2d 557, Syl. 3–5. Appellant's point 12 is accordingly overruled.

■ Appellant's points 15 and 16 assert that the court did not sufficiently instruct the jury that they should disallow any

disability arising by reason of the impaired hearing of the appellee. The evidence reflects that the appellee was deaf in one ear due to injuries received in army service but there is no evidence that his disability as asserted in this cause was in any manner affected by the defect in hearing which he had at the time of the accident here in issue. Points 15 and 16 are overruled.

Point 14, although discussed by appellant with points 15 and 16, will be discussed here with point 13 in the cause as it appears the issues raised by such points are interrelated. Under these points the principal issue may be simplified by a ruling here made that there is no evidence in the record which would require the trial court to submit an issue as to whether appellee's incapacity was due to natural conditions of his body. Nor is there evidence to require an issue as to the disability being caused by diseases or infections or by a combination of other injuries and diseases and infections. Further, appellant's request for submission of an issue as to whether the appellee was not in the same physical condition by January 31, 1952, that he was in prior to December 31, 1951, was properly refused as such issue is not an affirmative defensive issue but is merely the converse of the issue submitted by the court as to whether or not appellee sustained a permanent disability. But, the crucial issue raised by points 13 and 14 is the proposition that the trial court erred in not submitting appellant's requested charge that appellee's disability was produced by injuries at other times and places than the occasion here in issue. Appellant asserts that this issue was an affirmative defense and was properly plead and that such issue was raised by the evidence in the cause. This is the most grave and involved issue in the cause of action. The entire record has been reexamined in detail solely as to this issue but the facts will not be discussed here in detail. It may be first noted that appellant's physician supported his testimony by a number of x-ray pictures and like evidence. If his evidence was accepted by the jury, and the same is

regarded here as being firmly and ably presented, the same established that appellee never at any time or place sustained the injuries as asserted by him in the cause of action. Appellant's expert witness testified unequivocally that all the x-ray photographs showed a normal condition of the vertebrae and that there was nothing wrong with the appellee and never had been other than a slight muscular strain. Such evidence will not support an issue that appellee sustained his injury at other times and places.

The testimony of the first expert witness produced by appellee will not be again discussed herein as the same is regarded as entirely valueless in that it contravenes known and established medical facts as hereinabove pointed out. But, it appears that counsel for appellee changed experts, if not in midstream—thereabout, and it is here ruled that the testimony of appellee's second expert, relied upon by appellant as establishing its affirmative defense, is not sufficient to establish that appellee's incapacity was produced by injuries at other times and other places than as claimed by him herein. In this regard it is noted that although such expert in one phase of his testimony seemed to express doubt as to when the fractured vertebra of appellee was acquired, such fracture being described by this expert as existing in the second vertebra, it is noted that he further discussed this issue in the following manner: "Q. You have serious doubts that it happened in December—on December the 31st, 1951? A. I don't have serious doubts, I just wonder when it happened, that's all, I've—I don't know whether it's happened before or since that time, but I— the amount of calcification that we have there makes me wonder if it is an older fracture than a year ago. * * *". This is as far as such witness went in supporting the issue of an affirmative defense and on this issue it is noted that nowhere in the testimony of this expert witness does he testify that the injury occurred at any specific time or place other than at the time and place as shown by the testimony of appellee. It is further observed that

such expert at one time testified that a deposit of calcium was shown by the x-ray of the vertebræ here in issue. It is also revealed in the record by expert testimony that a callus is not deposited at the exact time of an injury but is deposited over a period of time following the injury. But, when counsel for appellee adroitly pointed out that the above mentioned x-ray as being viewed by his expert under cross-examination was one taken on the very day of the injury, such expert partially revised his testimony as follows: "A. Well, the picture is blurred a little bit, and I don't know whether that's callus, or whether it is just a haziness of the picture, but it does seem to show—there's no callus around this fracture line here, though. Looks like this up in here is—shows—it's a haziness, and I'm not sure that's callus or not". He had earlier ascribed the appellee's injury as being caused in a large measure by a fracture of the vertebra as shown in the x-ray pictures. The above testimony is quoted in that it must be recognized that if it had been established by competent testimony that a callus was found at the line of fracture in the second vertebra on the day of the purported accident this would constitute evidence of probative force that such cracked vertebra was incurred at a time and place other than the day of the alleged injury. It is further noted, although not pointed out by specific objection, that appellee's counsel in asking a hypothetical question of his medical expert predicated the question and answer upon facts not even remotely sustained by appellee's own testimony on direct examination. "* * * Doctor, just forget about the kicking, if I hold my entire weight on a chain three feet off the ground, and say I just turn loose of one side immediately, would that cause fractures like you have found? A. A sudden jerk is what I was thinking about awhile ago, and that does account—if he turned loose one hand and caught his—his weight came down on the other arm in twisted position, I think it could have caused it." But, appellee's expert finally says "* * * assuming that he had to have a hypo to relieve his pain, the logical thing to assume there would be that he did get hurt right at that instant, and I think I'll have to admit that he did get hurt then in spite of the fact that the injury seemed rather extensive for a muscular strain, but I rather think he did get hurt at that time." The many x-rays produced by appellant's own medical expert, as interpreted by said expert, do not reveal any injury occurring at other times and places nor does any of the evidence otherwise produced by appellant establish such issue. There is no evidence of sufficient probative force in this record to require the submission of the affirmative issue requested by appellant as to whether appellee acquired his disability from injuries sustained at other times and places than the occasion here in issue and appellant's points 13 and 14 are accordingly overruled.

The testimony supporting the judgment in the cause is unimpressive, even as to the expert testimony introduced, but will support the jury verdict. The cause was tried with spirit by the parties but the rulings of the trial court reflect no error requiring a reversal of the cause and its judgment is affirmed.