PLAINS CREAMERY, Inc., Appellant,

v.

Billie Jean DENNY et al., Appellees.

No. 6415.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 7, 1954.

Rehearing Denied Oct. 11, 1954.

defendants proximately causing the death of the said R. L. Denny. The record of the cause in the trial court reveals that R. L. Denny's death occurred by reason of a three-way collision involving a bus driven by the said Denny, a Ford automobile driven by the said Dale Johnson, a soldier, and appellant's creamery truck driven by E. V. Shew, who was likewise killed in the same collision. The facts reveal that the creamery truck, driven by E. V. Shew, while in the course of passing a vehicle proceeding in the same direction on a three-lane highway, was struck by the oncoming Ford automobile of Dale Johnson, a soldier, which said Ford automobile was in the act of passing the bus driven by Denny. The impact of the collision between the Ford automobile and the creamery truck caused the truck to jackknife and collide with the bus driven by the said Denny.

On the verdict of a jury in the cause, judgment was entered awarding appellees the sum of $70,000 as against Plains Creamery, Inc. and Dale Johnson, the soldier. Appellant, Plains Creamery, Inc., perfected an appeal and presents five points of error. These five points are divided into several subdivisions but only the points of error necessary to a disposition of this appeal will be discussed.

This Court reversed the judgment of the trial court in an original opinion which assigned, as one of the grounds for reversal, the fact that the trial court submitted to the jury certain issues with reference to the operation of appellant's creamery truck upon a two-lane highway when the undisputed evidence in the record revealed that the highway in issue was, in fact, a three-lane highway. Appellees, for the first time, in a motion for rehearing, answer appellant's point on this issue. Appellees' fourth, fifth and sixth assignments of error are confined to this subject and each of the three assignments is further subdivided into three sections. In closing subdivision 3 of assignment 6, it is noted that, apparently inadvertently, the Court's attention is directed to the fact that, although appellant complained of the submis-

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo (John E. Morrison, Jr., Amarillo, of counsel), for appellant.

Sanders, Scott, Saunders & Smith, C. J. Humphrey and Simpson, Clayton & Fullingim, Amarillo, for appellees.

MARTIN, Justice.

Appellees, Billie Jean Denny, surviving widow of R. L. Denny, deceased, and Robert Dale Denny, Donna Lee Denny and Deborah Faye Denny, surviving children of the said R. L. Denny, deceased, sought judgment as plaintiffs in the trial court against appellant, Plains Creamery, Inc. and Dale Johnson, a soldier, as defendants in the trial court for damages alleged to have been caused by the negligent acts of said

sion of issues solely applicable to a two-lane highway with reference to negligence of appellant's driver of its creamery truck, at the same time, appellant requested, and the court submitted to the jury on appellant's part, a like issue as to a two-lane highway with reference to negligence of Denny as the driver of the bus. An examination of the record reveals that, while appellant objected, in the trial court, to the submission of issues governing a two-lane highway as to its own driver, at the same time, appellant requested a like issue as to the driver of the bus. Since the record reveals that counsel for appellant requested the trial court to submit to the jury an issue as to a two-lane highway with reference to the operation of the bus by Denny, it is in no position to complain of the submission of like issues as to its own driver. Haynes v. Taylor, Tex.Com.App., 35 S.W.2d 104, Syl. 1; Southwestern Telegraph & Telephone Co. v. French, Tex.Civ.App., 245 S.W. 997, Syl. 12 (error refused); First State Bank of Three Rivers v. Petrucha, Tex.Civ.App., 38 S.W.2d 138, Syl. 4. Under the record and such authorities, appellant's point of error as to the erroneous submission of issues governing a two-lane highway is now overruled and appellees' points four, five and six are likewise overruled other than as to the issue ruled upon hereinabove.

The original opinion of this Court, with the exception of the matter hereinabove pointed out, is still retained but such opinion has been redrafted in response to allegations in appellees' motion for rehearing. This, the redrafted opinion, serves as the opinion of the Court on the issues before it as well as a ruling on appellees' motion for rehearing.

It is recognized that the assignments in appellees' motion for rehearing, other than that ruled on hereinabove, merely press upon the Court demands for a redrafting of its original opinion solely by reason of the fact that appellees' counsel seeks to compel the Court to accept counsel's theory of the double or "S" curve and to dictate the Court's choice of words and expressions as well as the Court's summation of all the facts and issues in the cause. In this redrafting of the original opinion, the Court does not intend to set a precedent of conforming either its language, expression or choice of words or summation of evidence to the dictates of counsel appearing before it nor does the Court, by redrafting its original opinion, recognize that it made any statement concerning the evidence that is not wholly supported by the record. It is particularly noteworthy that this Court in redrafting its original opinion, as demanded by counsel, does not do so under the repeated statements of counsel for appellees that this Court has so misquoted or misconstrued the record as to be on the verge of misleading the Supreme Court of Texas as to the facts and issues surrounding this cause. It is here recognized that the Supreme Court has been prompt to discern and to correct any errors of this Court.

The major complaint of appellees' counsel is concerned with the fact that this Court originally held the opinion, and so stated, that the collision in issue occurred on a three-lane highway east of Amarillo, Texas and on a straightaway section of the highway. Appellees' counsel, in great detail, has taken the Court to task on its statement that the collision *occurred* on a straightaway section of the highway. It is recognized that counsel has been highly disturbed by such statement by reason of the fact that appellees' entire cause of action is based on counsel's theory that the collision occurred by reason of a double or "S" curve in the highway. Counsel, in arguing the cause before the Court of Civil Appeals, drew his version of the double or "S" curve which he contended caused this collision. But, an examination of the record reveals that counsel for appellees, prior to the time of making such argument, had incorporated in the record before this Court a survey of a 1,925-foot section of the highway surrounding the collision. The survey was prepared for counsel by Morris Browning and Jimmy Nail, licensed state land surveyors. This survey is shown in the cause as plaintiff's Exhibit No. 2 and is here incorporated in the opinion for the light it may cast on the issue.

It will not be amiss to say, at this point, that this Court was too conservative in merely stating that the collision *occurred* on a straightaway section of the highway in that the section of the highway approaching the point of collision from each direction is best described by the following admissions of appellees' witnesses on the trial of the cause. The testimony of appellees' licensed surveyor reveals the following:

"Q. And that is, for all practical purposes, an absolutely straight road all along there? A. Yes sir."

Counsel, in addition to placing such surveyor on the witness stand and vouching for him, also placed on the stand as a witness, J. A. Dumas, a member of the State Highway Patrol whose evidence as to the highway surrounding the collision is as follows:

"Q. From all appearances, for a long distance there, both ways—I don't know how far—maybe half a mile, it is a straight road, isn't it? A. Yes sir."

Howard T. Trigg, a surveyor and engineer who has resided in Amarillo 64 years, testified, without controversy, that the surrounding road was a straight stretch of road and that there was a bend of nine feet in a quarter of a mile of the road.

"Q. And back down here where the wreck happened, you say that scope in there is approximately a quarter of a mile, in there, that the road is straight, except for nine feet variation, is that correct? A. Yes sir * * *."

In view of appellees' survey incorporated in this opinion, it may appear too obvious for discussion that the highway surrounding the collision was, for all practical purposes, a straight section of highway. But appellees' counsel has been overly insistent that this Court is grossly misleading the Supreme Court in not accepting his theory that the highway was a double or "S" curve and that such double or "S" curve governed the issues of negligence of appel-

lant's driver and the fixing of liability on the appellant.

■ With the Court's opinion having been sufficiently clarified as to the theory of the double or "S" curve, the Court will next dispose of the contention of appellees' counsel that this Court also gravely erred in stating that the issue of liability in the cause narrows to the single issue of whether the milk truck driven by E. V. Shew or the Ford automobile driven by Dale Johnson, the soldier, had the right of way in the center lane of the three-lane highway. The correctness of the Court's summary of the issue in the cause may be revealed in either one of two ways: (a) a discussion of the legal principles governing the situation, or (b) the far simpler method of resorting to the undisputed facts in the cause. By way of prelude to this subject, it is noted that appellant's assignment, in the trial court, that there was no evidence to support the jury verdict in the cause and that such jury verdict was contrary to the overwhelming weight and preponderance of the evidence was not brought forward on appeal and, therefore, cannot form the basis of any ruling in this Court on such issues. However, in view of the fact that the Court hereinafter expresses the opinion that the jury, in placing liability of $70,000 on the appellant creamery company, was motivated by elements of the closing argument placed before it by appellees' counsel as well as the fact that insurance, attorney's fees and other wholly improper elements were brought before the jury, the facts will be discussed here. Such survey of the evidence will clearly reflect that the jury in the cause, in arriving at its verdict, must certainly have been motivated by some element other than the undisputed facts in the cause.

■ Appellees' cause of action as plaintiffs in the trial court is presented in the first 139 pages of the statement of facts. It appears to be a reasonable assumption that counsel for appellees, as plaintiffs, most certainly incorporated in the initial proof of their cause of action those facts most

potently showing negligence on the part of the driver of appellant's creamery truck. It is also a well-settled principle of law that a party vouches for and is bound by the evidence of the witnesses which such party places on the witness stand. Appellees' counsel in this cause has gone further than vouching for some of his witnesses as placed on the stand as he asserts, in his motion for rehearing, that appellees' two witnesses, Mr. Bynum and Mrs. Bynum, are "the only witnesses who had a grandstand seat to this tragedy". It should not be amiss for the Court to use the sworn testimony of appellees' "grandstand" witnesses.

Weldon Bynum, one of the "grandstand" witnesses, testified, on direct examination by his counsel, that appellant's driver had never gotten completely in his right-hand or north lane in the three-lane highway but he further testified that appellant's driver had gotten the tractor part of the transport truck back in his, the driver's own north lane of the three-lane hghway. The testimony of such witness further shows that he was not positive whether the back wheels under the tank of the transport truck had gotten all the way back or not: "I am not in position to say *how far* the right wheels of the tank truck got back over in the lane". (Emphasis added.) This evidence is material in that appellant's truck was in the process of passing the Bynum car, as driven by Bynum in the right-hand lane of the three-lane highway. Mr. Bynum's testimony further reveals that he was driving about 35 miles per hour and appellant's truck " * * * had already already got up in front of me, and was in the process of moving back over into the right hand lane, and *everything seemed to be normal * * *"*. (Emphasis added.) But the most material part of the Bynums' testimony is that which establishes, without controversy, that the Plains Creamery truck *pulled out to go around the Bynums' automobile in the vicinity of a restaurant designated as the "Steak House"* which restaurant is shown on appellees' licensed survey of the section of the highway as incorporated herein. (Emphasis added.)

Mrs. Bynum, counsel's other "grandstand" witness, testified "I didn't notice the Creamery Truck until after it got around us". She further testified that she saw " * * * 'Plains Creamery' written across the back * * *" of appellant's truck. Mrs. Bynum's testimony reveals that the truck had practically completed its passing of the Bynums' car and such fact is further established, beyond controversy, by two elements governing the issue: (a) Mrs. Bynum could not have read the sign on the back of the truck tank until it was, in some degree, in front of her vision and, (b) it is a reasonable assumption that she could not read such sign at night until the rear of the truck tank had come within range of the headlights on the Bynums' car. She also testified that she saw " * * * *the side of the cab* when the Ford hit it * *". (Emphasis added.) Appellees' counsel, in his motion for rehearing, now asserts that his witness, Mrs. Bynum, from her position in the car, could not have seen the side of the cab when the Ford hit it although Mrs. Bynum, as a witness for appellees, testified under oath that she did. Further, if the truck had returned to its north lane and was sufficiently in advance of the Bynums' car, she could have seen this fact to which she testified under oath. Counsel's lately taken position as to this element is understandable in view of the fact that Mr. Bynum had already placed *the cab* of appellant's truck fully within its own right-hand lane of the three-lane highway prior to the time the Ford struck it. Another element of particular interest in the testimony of counsel's "grandstand" witnesses is the fact that Mrs. Bynum, appellees' most favorable witness, testified, without controversy, that immediately prior to the collision " * * * the Ford (driven by Johnson) was midway of the bus * *" as driven by Denny.

The above facts, in conjunction with appellees' survey shown hereinabove, are sufficient for this Court to interpret the issue of whether the jury was impelled by elements other than the facts placed in evidence in this cause in rendering its verdict establishing appellant's driver as negligent

on numerous counts. The Court would not be in error in merely accepting the uncontroverted testimony of appellees' witness Bynum as to the facts revealing non-liability on the part of appellant's truck driver. The following questions to and answers by Weldon Bynum clearly reveal the lack of any negligence on the part of appellant's truck driver:

"Q. And this truck came along there and made just a normal passing in every way, is that correct? A. Yes sir.

"Q. There wasn't anything reckless or unlawful at all that you saw, about that passing, was there? A. No sir.

"Q. And then the Ford hit it, and came on, running down by you, and the Ford was knocking sparks out of the pavement? A. Yes sir.

"Q. And he knocked the truck out of control, and then the explosion occurred, is that correct? A. Yes, sir."

■ It is the opinion of this Court that an examination of plaintiff's cause of action as presented in the first 139 pages of the statement of facts reveals no evidence of any negligent acts on the part of appellant's driver and that the jury's numerous findings of negligence on the part of appellant's driver, E. V. Shew, are contrary to the overwhelming weight and preponderance of the evidence. The following development of the facts revealed by appellees' survey and by the undisputed evidence as outlined above will support the above statement and will reveal the total lack of evidence to support any findings of negligence as to the driver of appellant's truck.

Mr. Bynum testified, without dispute, that the truck began going around him in the three-lane highway in the vicinity of "The Steak House". An examination of the survey, placed in evidence by appellees' counsel, reveals that the Steak House was situated, from the actual point of collision, a distance of 1,430 feet or a little more than a quarter of a mile. Even if the unreasonable assumption were made that the bus, driven by Denny, and the Ford automobile, driven by Dale Johnson, stood transfixed at the point of collision until appellant's truck arrived at the scene, it is an undisputed fact that appellant's driver, E. V. Shew, entered the center or passing lane of the three-lane highway at a point where he had more than a quarter of a mile to effect the passing of the Bynums' car which was traveling 35 miles per hour. However, the Court will not make the unreasonable assumption that the bus and the Ford automobile stood transfixed waiting for the appellant's truck to traverse the quarter mile from the Steak House to the point of collision. It is a reasonable assumption that, since the bus driven by Denny was proceeding down the highway at a rate of speed within the limit permitted by law, as testified to by appellees' witnesses, such bus was approaching the point of collision at approximately the same speed as the appellant's truck. Therefore, it is an undisputed fact that, since both the bus and the truck were approaching the point of collision at approximately the same speed when appellant's truck turned into the center or passing lane more than a quarter mile from the point of collision, at that exact time the bus operated by Denny was likewise approximately a quarter mile beyond the point of actual collision. Therefore, the undisputed facts reveal that, at the time the appellant's truck entered the center passing lane to go around the Bynums' car, the bus and Ford automobile involved in this collision were more than one-half mile distant. Even on the question of right of way, it is very cogent to note that, under Bynum's testimony, appellant's transport truck had already completed, in essence, its passing of the Bynums' car prior to the collision while just prior to the collision Johnson's Ford automobile was only about midway of the bus in its passing of the same. Therefore, the assumption must be made that the Ford automobile either had driven out from behind the bus into the center lane immediately prior to the collision or that it had been driving alongside the bus down the highway. It is not believed that counsel for appellees will find any great fault in the Court's assuming that the bus and Johnson's

Ford automobile had not traversed a long distance of the highway abreast but that Johnson's Ford automobile had just come from behind the bus and into the center lane in view of the fact that the undisputed testimony establishes that the Ford was traveling at a much higher rate of speed than any of the other vehicles.

Permitting the judgment to stand against appellant on jury findings of negligence as to its driver when the uncontroverted evidence introduced by appellees' own counsel establishes, beyond controversy, that appellant's driver only entered the center or passing lane of the three-lane highway at a time when the oncoming bus and Ford automobile were distant more than one-half mile is to uphold the principle of liability without fault. Further, such a verdict should not stand in the face of the uncontroverted statements of appellees' own witness, Bynum, revealing that appellant's driver was not guilty of a single act of negligence and that the collision was solely caused by the Ford automobile striking appellant's truck and knocking the same out of control. It should be observed that the testimony of Dale Johnson, the soldier, is that the appellant's truck had completed its passing of the Bynums' car and was back in its north lane at the time the soldier entered the center lane but this testimony has not been used in the development of the Court's opinion. Further, the issues above and undisputed facts have been detailed, in this opinion, solely in regard to whether the jury was impelled, in rendering its judgment by the evidence presented in the cause or by the inflammatory and prejudicial argument and other improper elements brought before it.

It is also worthy of mention, before closing any discussion of the facts, that the record is undisputed as to the issue that Johnson, generally known as "the soldier boy", had drunk two bottles of beer while eating two sandwiches at the army base and had likewise drunk two bottles of beer prior to going out on the highway and becoming involved in this collision. Numerous facts could be detailed further establishing the utter lack of any evidence of negligence on the part of appellant's truck driver, but the above summary of the undisputed facts presented by appellees should be sufficient to reveal that the jury's finding of negligence on the part of appellant's driver and thereby placing of liability on the appellant could not have been impelled by an unbiased analysis of the facts presented in this cause. It is, therefore, a sound assumption that the jury verdict must, of a certainty, have been influenced by the elements hereinafter set forth in this opinion as grounds for reversing the judgment of the trial court.

■■ Appellant's point one under sections (a) and (b) complains of the argument made by the appellees' counsel to the jury and as to inflammatory statements made during the course of the trial. To require a reversal of the cause, it is recognized that the argument and statements, as complained of, must have been improper and the error such that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the cause. Aultman v. Dallas Railway & Terminal Co., Tex., 260 S.W.2d 596. The record has first been examined with particular reference to counsel for appellees' frequent reference to this "widow woman" and "these kids" and further references to appellant as a "corporation". The term "kids" can be perhaps classified as a homely designation of children and, since the appellees are, in fact, a widow and her children and the appellant is, in fact, a corporation, the mere designation of the parties by this correct terminology was not error in that there were no qualifying words placed with such terms as to contrast the wealth and power of the corporation with the indigent circumstances of the widow and children.

Appellant's point one asserts, as error, the fact that appellees' counsel, in his closing argument to the jury in summing up the type of witnesses who appear before a jury, defined the following classification as to some of the witnesses and then *had both the deceased drivers place two of appellant's witnesses in such classifications in the following manner:* " * * * then we have

got the plain, deliberate, willful, lying perjurer". Following this classification, appellees' counsel then referred to two witnesses who appeared on behalf of appellant, referring to them as "* * * only two story tellers hit this witness stand during the trial of this law suit, * * *". Appellees' counsel, in his closing argument, then brought before the jury the deceased bus driver, R. L. Denny, who is pictured as speaking to the jury on behalf of his widow and children as follows: "Bob Denny would probably say to you, 'Dale Johnson'—". At this point, the argument was objected to as immaterial, pure speculation of counsel, and inflammatory and appellant's counsel requested the court to instruct the jury not to consider such argument. It would be well to point out, at this particular point, that it is apparent from this objection that the argument as complained of, by appellant, and as ruled upon by the court is that part of the argument wherein counsel for appellees brought the deceased drivers before the jury and had them address the jury. It may be noted here also that the trial court in ruling on appellant's objection to the argument of appellees' counsel, as made, stated:

"The Court: I think probably it is.
"Mr. Smith: I don't think it is.
"The Court: As to what you think the deceased would say?"

This statement by the trial court constitutes a ruling that the argument was, in fact, pure speculation and inflammatory. The court then followed up the statements above with the following language: "If you insist on it, you take the risk and the responsibility".

Following the above objection and ruling thereon in the trial court, counsel for appellees assumed the risk and responsibility by having the deceased bus driver testify in the closing argument as follows: "Dale Johnson, you and the truck driver got into a fight out in the center lane over which one was going to have it; the truck driver paid for it with his life; you took my life, and you can't do anything to me, and I am going to ask you to get on that witness stand, and don't lie on my kids". Aside

from the gross impropriety of having the deceased bus driver address the jury and state the above conclusions, it should also be noted that there is not a scintilla of evidence in this record to indicate that Dale Johnson, the soldier driving the Ford, and appellant's truck driver got into a fight out in the center lane over which one was going to have it. Further, in this connection, the statements by appellees' counsel, in his motion for rehearing, charging appellant's deceased truck driver of being "guilty of negligent homicide" and of "six different kinds of criminal negligence" are wholly without any support whatsoever in this record and should be withdrawn by counsel of his own accord.

Appellees' counsel conducted his argument in the above manner over the objections of the appellant duly presented as herein detailed. Counsel likewise brought back from the grave, E .V. Shew, the driver of appellant's milk truck and had him address the jury in the closing argument in the following language: "Gentlemen, I made a terrible mistake, and I paid for it with my life. My wife is not a party to this suit, in any shape, form or fashion; put on all the truthful testimony in my favor that you can, do not use perjurers or liars of any kind; lay it on the line and tell that jury to lay it on the line". When appellees' counsel also produced the deceased E. V. Shew before the jury, counsel for appellant further objected to such argument although he had already advised the court that his objections and exceptions went to all such arguments.

In view of the fact that appellees' counsel, in his motion for rehearing contends that this Court's original opinion was wholly unsupported by any sound fact or principle as to the ruling that the above argument was improper, it might be well to point out here the trial court's opinion of this same argument in view of the fact that the trial court heard the arguments made before the jury.

"The Court: I have held that is improper, and don't do that any more. I left the other somewhat for you to de-

cide on, but I do not think this is proper in this instance; that is my belief, and that is what I want you to do.

"Mr. Smith: We except. I did not intend to violate the rule.

"Mr. Harlan: We reserve a bill of exception because of the conduct of counsel".

In the light of such surrounding facts, as hereinabove disclosed, it may be further observed that any instructions by the trial court to the jury to disregard any part of the argument could not erase the harm created by the argument and by the reiteration of harmful parts thereof even after appellant's objections to such argument were sustained.

The above quoted matters have been placed herein because of the repeated contention of appellees' counsel that no objection was made to his argument. This and like contentions made in appellees' motion for rehearing are in the face of and in flat contradiction of the record in this cause. Counsel for appellees, in his motion for rehearing, with regard to the above detailed rulings made by this Court on such issues, has further alleged that this Court had no basis for its rulings on such issues other than certain improper motives ascribed to this Court as discussed hereinafter.

█ █ In ruling on the above issues, it is recognized by the Court that counsel may draw reasonable inferences and deductions from the facts proven in the trial of this cause. Even if counsel's conduct had been within such rule, in the light of the statement of facts, a deduction could not have been correctly drawn from the record that, if the deceased E. V. Shew had been actually present as a witness in the trial of the cause, he would have testified that he made a mistake causing this collision in which he lost his life. However, the action of counsel, in producing deceased persons to testify and to give their conclusions before the jury in the closing argument, is not here recognized as being even remotely within the principle of law permitting the drawing of legal deductions from proven facts and all

of appellees' counsel's assignments seeking to support his argument on this phase are overruled. Aside from this fact, although appellees' counsel had the right to draw proper inferences and deductions from proven facts as to the person he believed was negligent in this collision, the law does not permit him, within the realm of presumptions and inferences from the evidence, to draw further inferences as to what conclusions each of the deceased persons would have drawn from the fact situation at issue. Counsel first drew the inference that the deceased driver, E. V. Shew, was guilty of negligence; he then drew the further inference that Shew would appear as a witness in favor of the appellees and followed it with a third inference that Shew would draw the same inferences from the facts that counsel had drawn therefrom. "It is elementary that inferences can be drawn only from facts and not from other inferences." Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378, 381 [5].

█ No legal basis whatsoever existed for the production of the purported statements and conclusions of the deceased drivers speaking through appellees' counsel during his closing argument to the jury. The argument was particularly damaging, inflammatory and prejudicial wherein the deceased driver for the appellant was presented, in the closing argument of the cause, as admitting that he was at fault in the collision. This portion of the argument alone requires a reversal of the cause of action and the other matters are of like import. Appellant's point one is sustained as to the issues hereinabove discussed. Texas Employers' Ins. Ass'n v. Haywood, Tex., 266 S.W.2d 856. It may be noted that this cited cause was affirmed by the Court of Civil Appeals in 266 S.W.2d 499, under the principle that no objection was made to the improper arguments, Syl. 2, 3, 4 and 5. In the cause here at issue, objection was not only duly made to the improper argument but was repeatedly made to the same. Further, the argument was even deemed improper by the trial court who heard such argument made to the jury. Southwestern Grey-

hound Lines, Inc., v. Dickson, 149 Tex. 599, 236 S.W.2d 115.

Appellant's point one and subdivisions thereto present, as error, to the Court the following question submitted by appellees' counsel to the vice-president and manager of the appellant, Plains Creamery, Inc.: " * * * well, you haven't lost any sleep over this, have you?" This is not regarded here as a reference to the fact that the corporation carried insurance and, therefore, the vice-president had nothing to worry about or lose any sleep over as asserted by appellant's counsel. It is believed the trial court correctly summarized this reference as being an inquiry as to " * * * whether he had any conscience or not * * * ". This statement was improper but not sufficiently harmful, standing alone, to cause reversal of the cause.

Attention has also been called to appellees' argument wherein counsel said to the jury, "I don't care how many kinfolks or relatives you have with the Plains Creamery, you don't owe them the duty to prostitute your oath of office to find a thing like that against this widow woman and these kids * * * ". It may be here observed that this is, apparently, a chosen theory of appellees' counsel in that he has applied the same theory in but slightly different language to this Court. This argument was correctly objected to as being inflammatory and outside the record. However, the error in the same, in the opinion of this Court, cannot be wholly ascribed to appellant's theory that it · points out the wealth and power and vast expanse of the corporation by reference to kinfolks or relatives that members of the jury had with the Plains Creamery, Inc. As viewed here, the harmful error in the argument is that the same placed in the mind of each juror the thought that, if he did not render a verdict for the widow and children, he would be in the classification of a juror who prostituted his oath because he had kinfolks or relatives with the Plains Creamery, Inc. It was wholly improper and error to impress upon each member of the jury that, if he found a verdict in favor of the corporation,

he would be condemned. under · the belief that, in so doing, he had prostituted his oath as a juror because of his kinfolks and relatives with the corporation. Any issue as to whether members of the jury were related to members of the corporation should have been clarified by counsel in his examination of the jury panel and it was certainly not a proper subject to be discussed in his closing argument. However, as to whether there was any evidence upon which to base counsel's argument on such matter, it may be noted that the argument was without any factual basis in the record. On this issue, on the hearing of appellant's motion for a new trial, since counsel for appellees, by numerous innuendoes and references to a "sinker" on the jury had clearly directed the issue as to "kinfolks and relatives" with the creamery to one particular juror, appellant's counsel is believed to have clearly revealed that such argument was wholly without any factual basis by proving, conclusively, that the juror whom appellees' counsel had castigated as a "sinker" had neither kinfolks nor relatives with the Plains Creamery, Inc. The duress placed on the jury requires a reversal of the cause, aside from the other improper matters, as a jury should never be subjected to such elements during its deliberations.

Under appellant's point two, reversal of the cause is also required by reason of the fact that there was brought up before some members of the jury, the issue that an insurance company would pay the damages and also the issue as to the attorneys sharing in the award—which issues influenced some members of the jury in arriving at their verdict. In relation to the above matters, it is recognized that where there is a disputed issue as to whether or not misconduct did or did not occur, the trial court is accorded the same latitude in passing upon the credibility of the witnesses and of the weight to be given to their testimony as the jury had upon the trial of the original cause and the presumption here is in support of the trial court's ruling. Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770, at page 773, Syl. 5. However, an examination of the record, on

the motion for rehearing, reveals that there is no controverted issue as to whether the above matters were introduced before some of the members of the jury. The undisputed evidence establishes that the issues of insurance and of the attorneys' participation in the award were brought before some of the jurors during the deliberations of the jury. Upon a hearing of this issue, on motion for new trial, appellant placed one juror on the stand who testified that the issues of insurance and of attorneys' participation in the award for damages were brought up while the jury was in the course of its deliberations. The appellees then placed a number of jurors on the stand, as witnesses on behalf of the appellees, seeking to show that the issues of insurance and of attorneys' fees were not brought up in the presence of any of the jurors. On the proposition of whether a controverted issue on such matters was raised the record reveals, without controversy, through the witnesses for appellees, that the jury did not remain together during the course of the jury's deliberations on the case. The record further reveals, without controversy, that all of the jurymen were not in the jury room at all times and that some of the jurors would leave the room and "We would walk off in the dormitory there, and some of us look out the window and some of us might be playing dominoes". One of the jurors presented by appellees admitted that " * * * one man couldn't possibly have known everything that was said or what went on up there". The fact issues above discussed are revealed by the testimony of a number of witnesses for the appellees who further testified that it was possible that the subjects of insurance and of attorneys' fees could have been brought up at some time when some of the particular witnesses were not present. Summing up this issue, it is undisputed that the jury separated in little groups at various times and part were in one room and part in the dormitory. Some of the witnesses for appellees qualified their testimony as to whether the subjects of insurance and attorneys' fees were brought before the jury by saying that they heard no discussion of insurance and attorneys' fees "around the table". It is evident that, although the issue of insurance and attorneys' fees may not have been discussed around the table in the presence of the entire jury, such subjects were certainly brought before some jurors during the course of jury deliberations. The fact situation as to the issues of insurance and of attorneys' fees being brought before some of the jurors is aptly summarized by testimony of one juror called as a witness by appellees as follows: "Well, it wasn't mentioned around the table; I heard it mentioned but not around the table when we were deliberating".

The undisputed record reveals that the subjects of insurance and attorneys' fees were brought before some members of the jury during its deliberations and at least some jurors were reminded that these issues were not to be discussed by the jury during its deliberations. In its original opinion, this Court, in an instance or two, used the terminology "discussed" and appellees' counsel in his motion for rehearing outlined the terminology he desired the Court to place in its opinion. Irrespective of any quibble over mere choice of words to describe the bringing of the above issues before the jury, it is certainly revealed by the record on motion for rehearing that several of the jurors by some method had arrived at the firm conclusion that any judgment would be paid off by an insurance company. One juror placed on the stand by appellees testified:

"A. Well, someone just said they wondered who would have to pay the insurance."

Further, the following fact was developed by the interrogation of one of the appellees' witnesses who served on the jury in the cause:

"Q. And with respect to insurance, state whether or not this statement was made by one of the jury panel, that an insurance company will pay off this judgment, anyway? A. Well, that was the words spoken; that is all the same words in regard to insurance."

It is undisputed that the issues of insurance and of attorneys' participating in the award were brought before some members of the jury and that some members of the jury before the return of the verdict for damages had arrived at the conclusion that an insurance company would bear the loss. Traders & General Insurance Company v. Cossman, Tex.Civ.App., 212 S.W.2d 865, Syl. 2; Central Texas Ice Company v. Thomas, Tex.Com.App., 45 S.W.2d 181, Syl. 3.

The question of harm arising by reason of the subject of insurance and attorneys' fees being brought before some members of the jury will be briefly resolved by reference to the detailed fact discussion found at the inception of this opinion. An unbiased examination of the record reveals that there are no facts upon which a jury could have correctly placed liability upon the appellant by findings of negligence as to its driver. It is obvious that the jury in the cause were in some degree impelled in placing a $70,000 judgment against appellant by the issues above set forth. It is recognized that the harmful effect upon the jury as to such issues as to insurance and attorneys participating in the award was further enhanced by the argument of appellees' counsel as hereinabove ruled upon.

It is further observed that although the alleged controlling issues were presented by testimony involving many asserted fact situations, the jury answered all the issues with reference to creamery company's negligence and liability in only a few moments after answering the other issues in the cause. It is particularly noteworthy that one juror testified that he voted to give the widow and children $175,000. The evidence established that the initial vote of members of the jury as to the amount of the award, divided by twelve, fixed the amount of damages in the sum of $120,000 and that thereupon some jurors were not willing to return such sum as damages. These amounts must be further viewed in the light of the uncontroverted testimony that Denny was earning $400 per month. It is noteworthy that members of the jury testified, without objection thereto, that in arriving at the

amount of damages it merely determined the amount required to educate and keep each of the three children per year until each child reached the age of 21 years. Apparently, no consideration was given to Denny's life expectancy and monthly earnings.

Other asserted elements of misconduct by the jury are not borne out by the record—such as an agreement to find for the plaintiff and to answer all issues accordingly and the fixing of damages by a quotient verdict. Appellees' point two as to misconduct during deliberations of the jury due to the fact that there was brought before some of the jurors the issue of insurance and of attorneys participating in the damages award is sustained. This conduct was particularly erroneous in the light of the general conduct of deliberations as outlined in the record. Texas & Pacific Ry. Co. v. Gillette, 125 Tex. 363, 83 S.W.2d 307; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Wood v. Stokes, Tex.Civ. App., 219 S.W.2d 545; Waits v. Hogan, Tex.Civ.App., 220 S.W.2d 915; Sproles Motor Freight, Inc., v. Long, 140 Tex. 494, 168 S.W.2d 642.

Appellant's point five asserts that the trial court erred in granting plaintiff's motion to sever from this action the cause of action and the plea of intervention of Carolyn Shew. Such point is overruled in that the trial court did not err in granting such severance. The burden of proof as to sole proximate cause must be borne by the plaintiff in the action in the event of a retrial of the cause. The rulings made on the points hereinabove render unnecessary further rulings on appellant's various other points and subdivisions thereof.

An examination of the record reveals that one of the jurors in this cause was unwilling to accept the theory of counsel for appellees that the collision occurred on a double or "S" curve. Such juror was also unwilling to accept the theory that the collision was caused by any negligent act of appellant's truck driver—but, such juror entertained the view from the facts that the

collision was caused solely by the negligence of the soldier, Dale Johnson. Even though such juror finally joined in the verdict given in the cause—apparently by reason of the fact that he had at one time entertained a view of the facts contrary to counsel's theory, the entire jury was subjected to the condemnation that if they did not return a verdict for the widow and children as dictated by counsel for appellees that they had refused to do so solely by reason of the fact that they had "kinfolks or relatives" with the Plains Creamery, Inc. This argument was error as ruled hereinabove. When this Court, in its original opinion, was likewise unwilling to accept the theory of counsel for appellees that the collision occurred upon and by reason of a double or "S" curve as well as other elements of counsel's theory, a like condemnation of the Court was placed in appellees' motion for rehearing in the following language: "We humbly and earnestly say to you, as we said to the jury * * * that we don't care how many *friends* or relatives you have with the Plains Creamery, you don't owe them the duty to reverse this case upon the grounds you have assigned in your opinion." (Emphasis added.) First, it is again patiently observed by the Court that counsel does not correctly quote the record in that he has changed the phraseology from "kinfolks" to "friends"—evidently seeking to enlarge the scope of the allegation. Perhaps the better solution would have been to compel counsel to strike such a spurious allegation from his motion. It is not amiss to state that the writer of this opinion for the Court has neither friends, kinfolks nor relatives with the Plains Creamery. The other members of the Court have not been polled on the issue as it is beyond the concept of the undersigned that the judgment of this Court has ever been or ever will be dictated by either relationship or friendship. But, impelled by no thought other than that the correctness and justice of a judicial ruling by the courts should be ever apparent when presented to an unbiased mind, this opinion will rest upon the facts in this record and the principles herein outlined. As to counsel's condemnation of the Court as

quoted above, the court is willing to rest the issue of its integrity upon the rulings herein made under such facts and principles as outlined.

Appellees' motion for rehearing is overruled other than as sustained hereinabove. Under appellant's points of error as sustained in the rulings above, the judgment of the trial court is reversed and the cause is remanded.